## TRAER & Another v. CLEWS.

IN ERROR TO THE SUPREME COURT OF THE STATE OF IOWA.

Argued November 9, 10, 1885.—Decided November 23, 1885.

A suit in which the purchaser from a trustee in bankruptcy of property of the bankrupt estate asserts title against a defendant claiming an adverse interest therein, though brought more than two years after the cause of action accrues to the trustee, is not barred by the limitation of two years prescribed by Rev. Stat. § 5057, if the defendant acquired title by a fraud practised by him on the trustee, and the fraud was concealed by the defendant from the trustee and the purchaser, until within two years before the suit was brought.

When an incorporated company has been dissolved, and its affairs are in the course of liquidation, a sale and transfer by a stockholder of all his claims and demands on account of his stock is not void, because the vendee may be compelled to bring suit to enforce his right to such claims and demands.

There is nothing in the policy or terms of the bankrupt act which forbids the bankrupt from purchasing from the trustee property of the bankrupt estate.

A trustee in bankruptcy may sell the unencumbered property of the estate on credit, when he thinks it most for the interest of the creditors.

Henry Clews, the defendant in error, on January 17, 1878, brought this suit in the Circuit Court of Linn County, Iowa, against John W. Traer and others, to recover the value of fifty shares, of one thousand dollars each, of capital stock in the Cedar Rapids Northwestern Construction Company, and the dividends which had been declared thereon. The stock had been originally subscribed and owned by Clews. The Construction Company was organized in 1870. The dividends sued for were declared, ten thousand dollars in December, 1873, and five hundred dollars in January, 1874, and were in the treasury of the company ready to be paid out to the holder of the stock. On November 28, 1874, Clews was adjudicated a bankrupt, and his stock in the Construction Company, with the dividends which had been declared thereon, passed to J. Nelson Tappan, trustee of his bankrupt estate. In February, 1875, the Construction Company went into voluntary dissolution and liquidation, and John W. Traer, John F. Ely, and William

Green were appointed trustees to settle up its affairs and divide its assets among its stockholders, according to their interest therein. Traer, knowing that the dividends above mentioned had been declared, and the same being unknown to Clews and Tappan, his trustee in bankruptcy, on March 4, 1876, for the consideration of twelve hundred dollars, through the intervention of one Armstrong, who did not disclose his agency, purchased of Tappan, the trustee, the fifty shares of stock above mentioned. Traer alleged, and it appeared that the purchase was made by him for his wife, Mrs. Alla D. Traer.

Afterwards, on December 6, 1877, Tappan, the trustee in bankruptcy, assuming, as it may be supposed, that the sale of the stock made at the instance of Armstrong was void for fraud, sold all his claims and demands on account of the stock to Clews, who, on January 17, 1878, brought this suit. John W. Traer and others, who had been officers and trustees of the Construction Company, were made defendants to the original petition. The defendants demurred to the petition on the ground that it did not state facts sufficient to entitle the plaintiff to the relief demanded. The court overruled the demurrer. Afterwards, the plaintiff having discovered that, on March 4, 1876, the stock in the Construction Company had been assigned to Alla D. Traer, on October 28, 1879, amended his petition by making her a party defendant to his suit. Upon final hearing in the Circuit Court for Linn County, the suit was dismissed as to all the defendants except John W. Traer and Alla D. Traer, and judgment was rendered against them for fifteen thousand dollars. Traer and his wife appealed from this judgment to the Supreme Court of Iowa, which affirmed the judgment of the Circuit Court. By the present writ of error Traer and wife ask a review of the judgment of the Supreme Court of Iowa.

*Mr. N. M. Hubbard* and *Mr. Charles A. Clark* for plaintiffs in error.—I. The jurisdiction of this court arises under Rev. Stat. § 709, and is invoked upon two grounds. (1) To review the action of the court below in deciding against defendants' plea of the two years statute of limitations contained in the

bankrupt act, Rev. Stat. § 5057. This section applies to suits by and against trustees, as well as assignees in bankruptcy. Rev. Stat. § 5103. No question can arise as to the jurisdiction under this head. (2) The plaintiffs in error specially set up and claimed title to the stock and dividends under a written assignment from Tappan, trustee in bankruptcy, who held his commission, and exercised his authority under the United States, and the decision below was "against the title thus specially pleaded and claimed." This action of the State court is subject to review in this court under the statute cited, which confers jurisdiction to review the action of the State courts, "Where any title, right · . . . is claimed under any commission held, or authority exercised under the United States, and the decision is against the title, right, . . . . specially set up or claimed by either party under such . . . . commission or authority." The decisions fully sustain the jurisdiction of this court upon the last-mentioned ground. *New Orleans, &c., Railroad Co.* v. *Delamore,* 114 U. S. 501; *Factors' & Traders' Ins. Co.* v. *Murphy,* 111 U. S. 738; *Ray* v. *Norseworthy,* 23 Wall. 128; *Crapo* v. *Kelly,* 16 Wall. 610; *Green* v. *Van Buskirk,* 5 Wall. 307; *Sharpe* v. *Doyle,* 102 U. S. 686.

II. As to the statute of limitations. (1) The stock and accrued dividends were assigned to Mrs. Traer March 4, 1876. The dividends were paid to her March 20, 1876. The suit, as to her, was begun October 28, 1879. In the absence of fraud it was barred in two years from the time when the cause of action accrued as to Tappan by the statute; and consequently as to Clews who stood in his shoes. *Gifford* v. *Helms,* 98 U. S. 248; *Bailey* v. *Glover,* 21 Wall. 342. Thus the bar was complete as to Mrs. Traer when the suit against her was commenced. To avoid this Clews alleged against her fraudulent concealment, by amendments to his petition. The rules laid down by this court in *Wood* v. *Carpenter,* 101 U. S. 135, as to the fraud and concealment which will take a case out of the statute of limitations hold the party attempting it to stringent rules of pleading and evidence. He must declare what his discovery is, how it was made, why it was not made sooner, and that he used due diligence to detect. As to all these the circum-

stances must be fully stated and proved, and the delay which has occurred must be shown to be consistent with the requisite diligence. Now the allegations as to the discovery are that " Mrs. Traer's connection with the transaction was studiously concealed from plaintiff and his assignor," and that plaintiff had no knowledge of it previous to his discovery, September 24, 1879. The only proof to sustain this is the stipulation that the plaintiff's attorneys, who " conducted all the investigations touching such stock and dividends as such attorneys," had no such knowledge or information. Here there is neither pleading nor proof to avoid the bar, under the rulings above cited. (2) As to Traer, the cause of action was first set up in the amendment filed February 9, 1880. It accrued in March, 1876, when the dividends were paid over. The statute continued to run, after the commencement of the action and until the amendment was filed. Holmes v. Trout, 7 Pet. 171, 213; Illinois Central Railroad Co. v. Cobb, 64 Ill. 128, 140; Commissioners of Delaware County v. Andrews, 18 Ohio St. 49; Marble v. Hinds, 67 Maine, 203; Wooddridge v. Hathaway, 45 Texas, 380; Lansford v. Scott, 51 Ala. 557; Hawthorne v. State, 57 Ind. 286; Selma Railroad Co. v. Lacey, 49 Geo. 106. Clews did not attempt to remove the bar as to Traer, by charging discovery of the fraud within two years. He only attempted it as to Mrs. Traer. Hence as to Traer the charge is complete so far as the dividends are concerned. An assignment of the stock would not carry accrued dividends unless specially included. Jermain v. Lake Shore & Mich. Sou. Railroad Co., 91 N. Y. 483; Bright v. Lord, 51 Ind. 272.

III. The alleged assignment to Clews was not a conveyance of the stock, nor of the dividends, but only a transfer of a right of action to set aside a conveyance of the legal title to them without the right of possession which alone gives a party a standing place, even in a court of equity. Brace v. Reid, 3 Greene (Iowa), 422; French v. Shotwell, 5 Johns. Ch. 555, 566; S. C., 20 Johns. 668; Shufelt v. Shufelt, 9 Paige, 144, 146; De Hoyton v. Money, 2 L. R. Ch. 164; Prosser v. Edmonds, 1 Young. & Col. Exch. Eq. 481; Dickinson v. Beaver, 44 Mich. 631; Crocker v. Bellangee, 6 Wisc. 645; Graham v.

*Railroad Co.*, 102 U. S. 148. It does not admit of question that Mrs. Traer took title to the stock and dividends by the assignment. *Johnston* v. *Laflin*, 103 U. S. 800; *National Bank* v. *Watsontown Bank*, 105 U. S. 217.

IV. The assignment to Mrs. Traer in no event was void. At most it was voidable. For decisions in parallel cases see *Tippecanoe County* v. *Reynolds*, 44 Ind. 509, 514, 516; *Carpenter* v. *Danforth*, 52 Barb. 581; *Wardell* v. *Railroad Co.*, 103 U. S. 651; *Thomas* v. *Brownville Railroad Co.*, 109 U. S. 522; *Pneumatic Gas Co.* v. *Berry*, 113 U. S. 322, 327; and especially *Twin Lick Co.* v. *Marbury*, 91 U. S. 587. Mrs. Traer is not a trustee. If she were so in any sense, she did not unite the character of purchaser and seller at her own sale, but purchased of Tappan, who was *sui juris;* and if there was fraud, that rendered her solemn written muniment of title subject to impeachment therefor, but not a nullity. Of course an action at law for damages for the alleged fraud might be maintained by the defrauded party if he elected not to avoid the contract. But there can be no pretence that this is such an action. This is in fact a suit to rescind and avoid the assignment of the legal title to Mrs. Traer. Before any other relief than an award of damages could be given, such rescission must take place. As is said in *Twin Lick Co.* v. *Marbury*, the doctrine is well settled that the option to avoid such a contract must be exercised within a reasonable time. *Grymes* v. *Sanders*, 93 U. S. 55, says, on page 62, it must be exercised *at once.*

V. There could be no rescission without tender. The party seeking to avoid a contract for fraud must avoid *in toto*, if at all. If he treats the property as his own he will be held to have waived the objection, and will be bound as if the fraud or mistake had not occurred. *Mason* v. *Bonet*, 1 Denio, 74; *Grymes* v. *Sanders*, cited above. See also *Coolidge* v. *Brigham*, 1 Met. 547; *Perley* v. *Balch*, 23 Pick. 283; *Thayer* v. *Turner*, 8 Met. 550; *Bowen* v. *Schuler*, 41 Ill. 192; *Buchenau* v. *Horney*, 12 Ill. 336; *Cooley* v. *Harper*, 4 Ind. 454; *Moore* v. *Bare*, 11 Iowa, 198; *Baker* v. *Robbins*, 2 Denio, 136; *Bisbee* v. *Ham*, 47 Maine, 543; *Potter* v. *Monmouth Ins. Co.*, 63 Maine, 440.

VI. Clews has no title. (1) As has been pointed out, Clews does not show that he had received his discharge in bankruptcy, when he procured from Tappan, trustee in bankruptcy of his estate, the assignment on which he sues, paying therefor one dollar "and a certain bond." It was surely not competent for Clews while a bankrupt to purchase anything belonging to his own estate from his own trustee, and pay for it with his own bond, due in the future, on which nothing had been paid when Tappan's deposition was taken, and on which it is, inconceivable that anything ever will be paid for the benefit of Clew's creditors. (2) If Tappan held a valid claim against the Traers he was without authority of law to sell it to Clews for a bond or obligation to pay. His powers in this respect were those of an assignee in bankruptcy, Rev. Stat. § 5103, who can only sell for cash. Under the law, Clews has taken nothing by his alleged purchase. The payment of one dollar gives him no standing in equity. His situation seems to be aptly described by the language of Lord Abinger in *Prosser v. Edmonds*, cited above, quoted by this court with approval in *Graham v. Railroad Co.*, cited above: " All our cases of maintenance and champerty are founded on the principle that no encouragement should be given to litigation by the introduction of parties to enforce those rights which others are not disposed to enforce. There are many cases where the acts charged may not amount properly to maintenance or champerty, yet of which upon general principles, and by analogy to such acts, a court of equity will discourage the practice."

*Mr. Frank G. Clark* and *Mr. Llewellyn Deane* for defendant in error.

MR. JUSTICE WOODS delivered the opinion of the court. After stating the facts in the language above reported, he continued : ·

The defendant in error questions the jurisdiction of this court. As the record shows that the plaintiffs in error dispute the validity of a transfer to the defendant in error of the property in controversy, made to him by a trustee in bankruptcy, appointed under and deriving his authority from the bankrupt

act, and as the question is made whether the suit is barred by the limitation prescribed by the same act, we are of opinion that the jurisdiction of the court to decide these questions is clear. *Factors' & Traders' Insurance Co.* v. *Murphy*, 111 U. S. 738; *New Orleans, Spanish Fort & Lake Railroad Co.* v. *Delamore*, 114 U. S. 501.

The record does not leave it in doubt that the purchase by Traer from Tappan of the rights incident to the stock in the Construction Company belonging to the bankrupt estate of Clews was brought about by the fraudulent practices of Traer. As stated by the Supreme Court of Iowa, he was a stockholder, officer, and trustee of the Construction Company, and had been, from the first, actively engaged in the management of its affairs. As trustee he was solely intrusted with the custody of the assets, books, and papers of the corporation, and had full and complete knowledge of all matters pertaining to the assets and business of the company. He knew that the plaintiff or his bankrupt estate was entitled to dividends amounting to at least $10,500, received by Traer upon entering upon the discharge of his duties as trustee. The assets of the company, much of them being in money, he held as a trustee for the stockholders, being so constituted by the act of dissolution of the corporation. He misrepresented the value of these assets to both Tappan and Clews, and induced them to believe that the sum to which they were entitled did not greatly exceed $1200 in value, the amount of the consideration of the assignment of the stock by Tappan. He employed attorneys and agents to negotiate for the purchase of the stock, who concealed from Tappan that the purchase was made for Traer or his wife. These agents knew that they were making the purchase for Traer or his wife, and neither of them at any time was a good faith purchaser. In all of the transactions connected with the purchase of the stock Traer acted as the agent of his wife, who knew that her husband was a trustee holding the assets for the stockholders of the Construction Company, and knew their value, and was guided in her purchase by his advice and direction. She knew that Tappan was ignorant of the value of the assets, and she had knowledge of

the devices used by her husband to secure the purchase of the stock and dividends.

By means of these fraudulent devices she purchased from Tappan, for the price of $1200, property which the State Circuit Court found to be of the value of $15,000. The charge of fraud made in the petition was, therefore, fully sustained.

Among other defences pleaded by Alla D. Traer was the following : " That plaintiff's pretended right of action herein accrued in favor of plaintiff's assignor, J. Nelson Tappan, as trustee in bankruptcy of plaintiff's estate, more than two years before the commencement of this suit against this defendant, and more than two years before she was made a party defendant herein, and that this action is fully barred as to her by the provisions of the act of Congress in that behalf, and was so barred before she was made a party defendant herein."

This plea sets up the bar prescribed by the second section of the bankrupt act, now forming § 5057 of the Revised Statutes, which declares : " No suit, either at law or in equity, shall be maintainable in any court between an assignee in bankruptcy and a person claiming an adverse interest touching any property or rights of property transferable to or vested in such assignee, unless brought within two years from the time when the cause of action accrued for or against such assignee."

The suit was brought against John D. Traer within two years after the fraudulent purchase and transfer of the stock and dividends, but Mrs. Traer was not made a party to the suit until after the lapse of three years and a half from the time of the purchase and transfer. The question is presented by one of the assignments of error whether, upon the circumstances of this case, the suit was barred as to Mrs. Traer.

The amended petition filed in the case on October 28, 1879, the day after Mrs. Traer had been made a defendant, averred that John W. Traer, while holding the office of trustee of the Construction Company, falsely represented to Tappan that there were no dividends due the estate of Clews from the stock held by him in the Construction Company, and falsely and fraudulently concealed from him the true condition of the company with the intent of undervaluing the stock and divi-

dends declared thereon; that Traer and his wife employed one Armstrong to purchase for Mrs. Traer the said stock and dividends; that Armstrong took from Tappan an assignment of the certificate of stock to Mrs. Traer; that he forwarded the certificate to one Howard, whom Traer and his wife had previously employed, and Howard, following the instructions of Traer and his wife, carried the certificate to the headquarters of the Construction Company at Cedar Rapids, and demanded of Traer, as trustee, the dividends and interest thereon; whereupon Traer paid over to Howard, his own and his wife's attorney, the sum of $11,913.75 on account of said dividends and interest, and Howard, while pretending to act for Armstrong, " carefully concealed from those who might inform the said plaintiff's trustee in bankruptcy, and from the papers and receipts, that he was acting as the attorney for John W. Traer and Alla D. Traer, his wife," and that after receiving said sum of money and receipting the vouchers prepared by Traer, as trustee, he paid back the money to Traer and his wife, less the amount of his own share as co-conspirator and attorney. Afterwards, it was alleged, Traer transferred the stock to his wife upon the books of the company.

These averments show not only a fraudulent concealment of the value of the stock and dividends from Tappan by Traer, acting as agent for his wife, but a carefully devised plan by which the payment of the dividends to Mrs. Traer was concealed from Tappan, and no trace of such payment left upon the books and vouchers of the Construction Company. Subsequently, and before the trial of the case, the following amendment was made to the petition:

" That as to the matters and things herein set forth as a cause of action against the said Alla D. Traer, the said fraudulent transactions with which she was connected and her part therein were studiously concealed from the plaintiff and his assignor, and he had no means of discovering the same, nor had his assignor any means of discovering the same until the same were disclosed upon the examination of John W. Traer, as witness in this action, on the 24th day of September, 1879; that the plaintiff and his assignor did not know of the said fraud

and the fraudulent acts of the defendant, Alla D. Traer, until the same were made known on the said examination." No issue was taken on this amendment.

The State court having entered a general finding and judgment against the defendants, John W. Traer and Alla D. Traer, his wife, the facts set out in the pleadings of the plaintiff, so far as they are necessary to support the judgment, must be taken as established by the evidence. The question is therefore, do the facts alleged constitute a good reply to the plea of the two years' limitation filed by Mrs. Traer? We think they do. The fraud by which Mrs. Traer succeeded in purchasing from Tappan for $1200 property to which he had the title worth $15,000, must necessarily have been a fraud carried on by concealment from Tappan of the true value of the property purchased. Such is the averment of the plaintiff's pleadings. But not only was fraudulent concealment in accomplishing the fraudulent purpose averred, but also a studious concealment from the plaintiff Clews, and Tappan, the trustee, of the connection of Mrs. Traer with the fraud, and their want of means to discover the fraud, until it was revealed by the examination of John W. Traer on September 24, 1879. The case is substantially the same, so far as the question now in hand is concerned, as that of *Bailey* v. *Glover*, 21 Wall. 342. The averment of fraudulent concealment in that case was, as shown by the report, as follows : " The bill alleged that the " [defendants] " kept secret their said fraudulent acts, and endeavored to conceal them from the knowledge, both of the assignee and of the said Winston & Co., [creditors of the bankrupt] whereby both were prevented from obtaining any sufficient knowledge or information thereof until within the last two years, and that, even up to the present time, they have not been able to obtain full and particular information as to the fraudulent disposition made by the bankrupt of a large part of his property."

The court in that case, upon demurrer, held in effect that these averments were sufficient to take the case from the operation of the same limitation which is set up in the present case. In delivering the judgment of the court, Mr. Justice Miller said: " We hold that, where there has been no negligence or

laches on the part of a plaintiff in coming to a knowledge of the fraud which is the foundation of the suit, and when the fraud has been concealed, or is of such a character as to conceal itself, the statute does not begin to run until the fraud is discovered or becomes known to the party suing, or those in privity with him."

So in the case of *Rosenthal* v. *Walker*, 111 U. S. 185, the plaintiff averred that "both the said Carney and the defendant kept concealed from him, the said plaintiff, the fact of the said payment and transfer of the aggregate sum of $30,000, . . . and the fact of the sale, transfer and conveyance of the said goods, . . . and that he, the said plaintiff, did not obtain knowledge and information of said matter until the 29th day of November, 1879, and then, for the first time, the said matters were disclosed to him, and brought to his knowledge." p. 187. These averments were held sufficient on exception to the petition to take the case out of the bar prescribed by § 5057 of the Revised Statutes. The case of *Bailey* v. *Glover*, has never been overruled, doubted, or modified by this court. On the contrary, in *Rosenthal* v. *Walker*, it was reaffirmed, and was distinguished from the case of *Wood* v. *Carpenter*, 101 U. S. 135, relied on by the appellants. The authorities cited are in point and fully support our conclusion that, upon the pleadings and evidence the suit of the plaintiff was not barred by the limitation prescribed by § 5057 of the Revised Statutes.

The next contention of the appellants is that the transfer executed by Tappan to Clews was not a sale to him of a right of property in the stock of the Construction Company, and of the dividends, but merely the transfer of a right to sue Traer and his wife for a fraud, and was, therefore, void. The assignment was as follows:

"In consideration of the sum of $1.00 to me paid by Henry Clews, the receipt whereof is hereby acknowledged, and for other good and valuable considerations, I hereby sell, assign, transfer, and set over unto the said Henry Clews any and all claims and demands of every name, nature, and description that I may now have or be entitled to on account of the fifty shares of the capital stock in the Cedar Rapids & North-

western Construction Company, which was subscribed for said Henry Clews."

This paper will not, in our opinion, bear the construction put upon it by the appellants. Treating the transfer to Mrs. Traer as void, its evident purpose is to assign to Clews whatever property and rights were incident to the ownership of the stock.

When this paper was executed, the corporation known as the Construction Company had been dissolved and its affairs were in the course of liquidation. The ownership of the stock simply entitled the holder to a proportionate interest in the unpaid dividends which had been declared before the dissolution of the company, and to a *pro rata* share of the proceeds of the company's assets, and in this consisted its sole value. The language of the assignment, by which Tappan undertook to transfer to Clews all claims and demands which Tappan then had or might be entitled to on account of the fifty shares of stock in the company which had been subscribed by Henry Clews, was aptly chosen to convey the dividends which had been declared, and an interest in the property of the company in proportion to the fifty shares of stock. It did not transfer a mere right to sue Traer and his wife. That right was simply an incident to the transfer of substantial and tangible property.

The rule is that an assignment of a mere right to file a bill in equity for fraud committed upon the assignor will be void as contrary to public policy and savoring of maintenance. But when property is conveyed, the fact that the grantee may be compelled to bring a suit to enforce his right to the property, does not render the conveyance void. This distinction is taken in the case of *Dickinson* v. *Burrell*, L. R. 1 Eq. 337. The facts in that case were that a conveyance of an interest in an estate had been fraudulently procured from Dickinson, by his own solicitor, to a third party for the solicitor's benefit, and for a very inadequate consideration. Dickinson, ascertaining the fraud, by a conveyance which recited the facts, and that he disputed the validity of the first conveyance, transferred all his share in the estate to trustees for the benefit

of himself and children. The trustees filed a bill to set aside the fraudulent conveyance, upon repayment of the consideration money and interest, and to establish the trust. The Master of the Rolls, Lord Romilly, in sustaining the bill, said: "The distinction is this: if James Dickinson had sold or conveyed the right to sue to set aside the indenture of December, 1860, without conveying the property, or his interest in the property, which is the subject of that indenture, that would not have enabled the grantee, A. B., to maintain this bill; but if A. B. had bought the whole of the interest of James Dickinson in the property, then it would. The right of suit is a right incidental to the property conveyed." The Master of the Rolls then refers to the cases of *Cockell* v. *Taylor*, 15 Beav. 103, and *Anderson* v. *Radcliff*, El. Bl. & El. 806, where he says the same distinction is taken.

The rule was expounded by Mr. Justice Story in *Comegys* v. *Vasse*, 1 Pet. 193, as follows: "In general it may be affirmed that mere personal *torts*, which die with the party, and do not survive to his personal representative, are not capable of passing by assignment; and that vested rights, *ad rem* and *in re*, possibilities coupled with an interest and claims growing out of and adhering to the property, may pass by assignment." p. 213.

In *Erwin* v. *United States*, 97 U. S. 392, Mr. Justice Field, who delivered the opinion of the court, said: "Claims for compensation for the possession, use, or appropriation of tangible property constitute personal estate equally with the property out of which they grow, although the validity of such claims may be denied, and their value may depend upon the uncertainties of litigation or the doubtful result of an appeal to the legislature." p. 396. And see *McMahon* v. *Allen*, 35 N. Y. 403, decided in the State where the assignment in question was made; *Weire* v. *The City of Davenport*, 11 Iowa, 49; and *Gray* v. *McCallister*, 50 Iowa, 498, decided in the State where the suit was brought. See also a discussion of the subject in *Graham* v. *Railroad Co.*, 102 U. S. 148.

Applying the rule established by these authorities, we are of opinion that, so far as the question under consideration is

·concerned, the assignment of Tappan to Clews was the transfer, not merely of a naked right to bring a suit, but of a valuable right of property, and was, therefore, valid and effectual.

It is next insisted by the plaintiffs in error, that Clews acquired no title to the dividends and other property which Tappan attempted to transfer to him, because (1) he had not been discharged as a bankrupt at the time of the transfer, and (2) because Tappan had no authority to sell the stock and its dividends for a bond or obligation to pay, as the evidence shows was the case, but only for cash.

Whether Clews had been discharged at the date of the transfer to him is immaterial. After his adjudication as a bankrupt, and the surrender of his property to be administered in bankruptcy, he was just as much at liberty to purchase, if he had the means, any of the property, so surrendered, as any other person. The policy of the bankrupt act was, after taking from the bankrupt all his property not exempt by law, to discharge him from his debts and liabilities, and enable him to take a fresh start. His subsequent earnings were his own. A bankrupt might often desire, out of the proceeds of his exempted property, or out of his means earned since his bankruptcy, to purchase property which he had surrendered to the assignee. This he might do, and there is nothing in the letter or policy of the bankrupt act which forbids his doing so until after his discharge. For, having complied with the law, as it must be presumed he has, he is, after the lapse of six months, entitled, as a matter of course, to his discharge. His right to purchase property surrendered cannot, therefore, depend on his actual discharge, and, in this respect, he stands upon the same footing as any other person.

· As to the second ground upon which the validity of the title of Clews is questioned, it is sufficient to say that, by the bankrupt law, § 5062 Rev. Stat., it is provided: "The assignee shall sell all such unencumbered estate, real and personal, which comes to his hands, on such terms as he thinks most for the interest of the creditors."

If, therefore, the plaintiffs in error occupied the position of guardians for the creditors of the bankrupt estate, and had the

right, in this suit, to question the administration of the trustee, the section referred to would be a sufficient answer to the exception taken to the sale by Tappan to Clews of the property which is the subject of this controversy. We think, therefore, that no ground is shown on which the title of Clews can be successfully assailed.

Other points have been raised and argued by counsel, but as these do not present any Federal question, it is not our province or duty to pass upon them. *Murdock* v. *City of Memphis*, 20 Wall. 590. All the Federal questions presented by the record were, in our judgment, rightly decided by the Supreme Court of Iowa.

*Judgment affirmed.*