## EDMUNDS v. ILLINOIS CENT. R. CO.

### (Circuit Court, N. D. Iowa, W. D. April 21, 1897.)

1. ASSIGNABILITY OF CAUSES OF ACTION—STATE AND FEDERAL LAWS.

The question whether the beneficial interest in a chose in action created by an act of congress is assignable is controlled by the federal law, independent of the state laws. But the question whether the assignee may maintain an action thereon in his own name is a question of procedure, depending on the state laws.

2. SAME—TEST OF ASSIGNABILITY.

If a chose in action or claim constitutes a property right, which, upon the death of the party, would pass to his legal representative, then, as a rule, it is assignable, so as to transfer the beneficial interest.

3. SAME—CLAIMS FOR OVERCHARGES UNDER INTERSTATE COMMERCE LAW.

Claims for damages to recover overcharges, under sections 8 and 9 of the interstate commerce law, constitute property rights, which may be assigned so as to convey the beneficial interest therein to the assignee.

4. SAME—RIGHT OF ASSIGNEE TO SUE.

An action brought in a federal court in Iowa to recover damages for overcharges, under sections 8 and 9 of the interstate commerce law, is maintainable in the name of the assignee thereof, under the provision of the Iowa Code requiring all suits to be brought in the name of the real party in interest.

Action, under provisions of interstate commerce act, to recover damages for alleged overcharges. Submitted on demurrer to petition.

Harl & McCabe, for plaintiff.

B. F. Ayer and J. F. Duncombe, for defendant.

SHIRAS, District Judge. This is an action in which the plaintiff seeks to recover damages against the defendant railroad company for alleged overcharges upon interstate shipments of freight, the right of action being based upon the provisions of the interstate commerce act. The first count in the petition seeks to recover damages accruing to the plaintiff upon shipments made by himself, and the remaining counts are founded upon claims accruing to third parties, and by them assigned to the plaintiff. The defendant company demurs to the second and subsequent counts, upon the ground that claims for overcharges, in violation of the provisions of the interstate commerce act, are not assignable, and that the language of the act is such that the right to sue for damages is confined to the person or corporation suffering the damages in the first instance.

It is not questioned that at the common law a chose in action, of the nature of those counted on in this case, is not assignable, so as to enable the assignee to maintain an action at law thereon in his own name; and therefore, to confer the right of action upon an assignee, it must appear that the right is conferred by some statute or rule of law, applicable to the particular case. Thus, in Glenn v. Marbury, 145 U. S. 499–509, 12 Sup. Ct. 914, 918, it is said:

"The right which the express company acquired by the defendant's subscription to its capital stock was only a chose in action. It passed by the deed of September 20, 1866, to the trustees Blair, Kelly, and O'Donnell, but subject to the condition that a chose in action is not assignable, so as to authorize the

assignee to sue at law, in his own name, unless the right so to do is given by a statute, or by settled law, in the jurisdiction where suit is brought. This is the well-established rule of the common law, and the common law touching the subject governs in the District of Columbia."

On behalf of plaintiff it is claimed that it is the settled law of the state of Iowa that choses in action are assignable so as to confer a right of action in the name of the assignee, and such seems to be the effect of the rulings of the supreme court of the state. Weire v. Davenport, 11 Iowa, 49; Vimont v. Railway Co., 64 Iowa, 513, 17 N. W. 31, and 21 N. W. 9; Everett v. Railway Co., 73 Iowa, 442, 35 N. W. 609.

·On behalf of the defendant company it is claimed that the causes of action set forth in the counts of the petition that are demurred to arise solely under the provisions of the interstate commerce act; that jurisdiction to entertain the same is confined to the courts of the United States; that as the cause of action is created by the act of congress, and certain remedies are therein provided for, no other proceeding can be maintained, save those named in the statute; that these are limited, by the express provisions of section 9 of the act, to the right to make complaint to the commission or to bring suit for damages on behalf of the party injured; that neither the interstate act nor the statutes of the United States provide for or authorize the assignment of claims for damages under the interstate commerce act; and that, as congress has legislated upon the mode of enforcing claims for damages arising under that act, that fact prevents recourse to the provisions of state laws upon that subject.

This court has held in this and other similar cases now pending that the state courts have not concurrent jurisdiction with the courts of the United States over actions for damages, based upon the provisions of sections 8 and 9 of the interstate commerce act. See Van Patten v. Railway Co., 74 Fed. 981. In that case it was held that, as the suits were expressly based upon the cause of action created by section 8 of the act, the only remedies available were those provided in section 9, and these were limited to a right to make complaint to the commission, or to bring suit for damages in a district or circuit court of the United States; and the question now presented for determination is whether a claim for damages arising under the act can be assigned to a third party, so as to authorize him to maintain an action thereon in his own name. This question presents two matters for consideration, the first one being whether a claim for damages based upon the provisions of section 8 of the interstate commerce act is assignable, so as to transfer the beneficial interest therein to the assignee; and, second, if the claim is assignable, can the assignee maintain an action at law thereon in his own name?

If the chose in action is of such a character that it can be assigned, so as to· transfer the beneficial interest therein to the assignee, then the question whether suit thereon can be maintained in the name of the assignee, or must be brought in the name of the assignor for the benefit of the assignee, is merely a question of the mode of procedure, determinable by the law of the forum; but the question whether the chose in action can be assigned, so as to confer any right or interest

therein on the assignee, is a matter affecting the merits, and is controlled by the law creating the cause and right of action. If the causes of action assigned to the plaintiff in this suit were not entirely creations of the act of congress, but arose under the principles of the common law, and of which the courts of the state would have concurrent jurisdiction with the federal courts, the question at issue might not be difficult of solution. The cause of action, however, and the right of action with regard to these claims for damages are alike created by and based upon the act of congress, and it would seem, therefore, that the question of the assignability of claims of this character is determinable by the federal law, and not by that of the state of Iowa. Thus, in Pritchard v. Norton, 106 U. S. 124–130, 1 Sup. Ct. 102, 106, it is said:

"Whether an assignee of a chose in action shall sue in his own name, or that of his assignor, is a technical question of mere process, and determinable by the law of the forum; but whether the foreign assignment, on which the plaintiff claims, is valid at all, or whether it is valid against the defendant, goes to the merits, and must be decided by the law in which the case has its legal seat. * * * It is to be noted, however, as an important circumstance, that the same claim may sometimes be a mere matter of process, and so determinable by the law of the forum, and sometimes a matter of substance, going to the merits, and therefore determinable by the law of the contract."

The question, therefore, is whether claims for damages based upon section 8 of the interstate commerce act, under the provisions of the laws of the United States, are assignable. It will be remembered that the court is considering now only the point whether the property interests represented by the assigned claims are assignable, so as to convey the beneficial interest therein to the assignee; and this does not involve the question whether suit thereon can be maintained in the name of the assignee. The choses in action sued on in this case do not grow out of purely personal torts, which at the common law would lapse at the death of the party injured, but constitute property rights, which would pass to the legal representative upon the death of the original owner thereof.

In regard to choses in action of the latter character, the general rule is, as I understand it, that the beneficial interest therein may be lawfully assigned to another, subject to the exception that, in case the substance of the claim be such that public policy forbids the assignment thereof, then it is not assignable; and of course, if there be an express statutory prohibition against the assignment of a given class of claims, that would except that class from the operation of the general rule. In Traer v. Clews, 115 U. S. 528, 6 Sup. Ct. 155, Henry Clews brought an action at law to recover, as damages, the value of 50 shares of the capital stock of the Cedar Rapids Northwestern Construction Company, and the dividends which had been declared thereon. Clews was the original owner of the stock, having subscribed therefor in 1870. In November, 1874, Clews was adjudged a bankrupt, and his property, including the named shares of stock, was assigned to Tappan, trustee of his estate. Subsequently Traer purchased the stock and the dividends declared thereon from the assignee, under circumstances which rendered the purchase a fraud upon the assignee and the rights represented by him. In December, 1877, Tappan, the

assignee, sold all his claims and demands on account of the stock to Clews, who thereupon brought suit for damages. In response to the objection that the transfer from Tappan to Clews was merely of a right to bring an action, which could not be assigned, the supreme court held that "we are of opinion that, so far as the question under consideration is concerned, the assignment of Tappan to Clews was the transfer, not merely of a naked right to bring a suit, but of a valuable right of property, and was therefore valid and effectual." In Erwin v. U. S., 97 U. S. 392, it was held that a claim for the proceeds of cotton captured by the military forces of the United States, and sold by the government, was in the nature of a property right, and, as such, passed by assignment to an assignee in bankruptcy. In Lewis v. Bell, 17 How. 615, it was held that a claim against the Brazilian government, growing out of the seizure of a vessel, was assignable, so as to authorize the assignee to demand and receive payment from the secretary of the treasury of the United States of the money paid by Brazil in settlement of the claims. In Trust Co. v. Walker, 107 U. S. 596, 2 Sup. Ct. 299, it was ruled that a claim for supplies furnished to a railroad company was assignable, so as to confer upon the assignee the right to require the receiver of the railroad company to pay the assigned claims in preference to the bondholders. These cases and others of like import establish the rule that a naked right of action, like that for purely personal torts, such as for assault and battery, defamation, false imprisonment, or malicious prosecution, cannot be assigned; but if the chose in action or claim constitutes a property right, which, upon the death of the party, would pass to his legal representatives, then it is assignable, so as to transfer the beneficial interest to the assignee. Exceptions to this general rule may be found in cases of executory contracts, wherein the relations between the parties or the subject of the contract are such that it fairly appears that it was the intent of the contracting parties that performance of the obligations assumed should rest only on the original party, in which class of cases the assignment of the contract is not valid, unless assented to by the other party thereto. Delaware Co. Com'rs v. Diebold Safe & Lock Co., 133 U. S. 473, 10 Sup. Ct. 399; Arkansas Val. Smelting Co. v. Belden Min. Co., 127 U. S. 379, 8 Sup. Ct. 1308.

In this case we are not dealing with executory contracts, but with a claim for damages, and the rule applicable thereto is to be found in the principle recognized by the supreme court in Traer v. Clews, 115 U. S. 528, 6 Sup. Ct. 155, already cited, in which it is held a mere naked right to bring a suit is not assignable, but a right of property is assignable. The claims declared on are based upon the alleged fact that the defendant company charged the shippers exorbitant or unreasonable rates upon the freight by them shipped on defendant's road, and in reality the action is brought to recover back the sums of money, which, it is claimed, the shippers were compelled to pay, over and above a reasonable rate. To illustrate the point, suppose it appeared that there were two shippers who had been overcharged upon certain shipments of freight, the amount of the exorbitant charge in each case amounting to $100; and it appeared that the one shipper had paid the overcharge in money, and the other had paid the

amount of overcharge in bullion at its market value. The complaint of the latter would be that he had been compelled, in order to secure the shipment of his freight, to part with and deliver or pay to the carrier the bullion of the value of $100, or, in other words, that he had been wrongfully deprived of property of the named value. Can there be any question that in that case the shipper would have the right to demand a return of the property wrongfully exacted from him, and that it would be the duty of the carrier to return to the shipper the property wrongfully extorted from him, or to account for its value? Clearly, in that case the claim of the shipper would be a property right, and not a mere naked right to bring an action. The test is whether the person's property or estate has been lessened in value by the action of the adversary party. Thus, in cases of assault and battery, malicious prosecution, libel, and the like, the injury is to the person or the character or business standing of the party, and not directly to his estate; and an assignment of a claim of that nature would be a transfer merely of a right of action, not directly associated with a property right. In cases, however, where the wrong act complained of has operated directly against the property or estate of another, thereby lessening it in amount or value, the party injured has a property right to be protected. He may seek to recover back the property of which he has been deprived, or he may seek damages for the injury to his estate. The nature of the claim arising to him, in such a case, is not determined by the mere form of the remedy he may adopt, but is dependent upon the question whether the injury complained of was to his person or to his property or estate. In the supposed case of the payment of the overcharge in bullion, the estate or property of the shipper would be lessened by that amount; and there can be no question that under the rule given us by the supreme court in Traer v. Clews, supra, a claim arising under such circumstances would be a property right, and, as such, would be assignable. Is there any substantial difference, however, between a case wherein the wrongful overcharge is paid in bullion, or a case wherein the overcharge is paid in money? In each of the supposed cases the wrong act of the carrier is the same, to wit, the illegal exaction of an exorbitant charge for services rendered. The result to the shippers in each case is identical. In each case he is compelled to part with property, in the one case bullion, in the other money, of the same value; and in each case the property or estate of the shipper is lessened to the same extent. In each case the injury caused by the wrong act of the carrier affects, not the person of the shipper, but his estate; and if the claim in the one case is in the nature of a property right, and therefore assignable, the same must be true as to the other.

It is further earnestly contended on behalf of the defendant that, even though the claims in question might be held assignable under the general rules of law governing that question, the terms and provisions of the sections of the interstate commerce act, creating the right of action, are such as to show that it was the intent of congress to limit the right to the remedies provided for in the act to the party originally injured, and it must therefore be held that the act prohibits the assignment of claims for damages based upon section 8 of the

act. In support of this contention, it is assumed that the remedy by way of appeal to the commission can be availed of only by the original shipper or party injured, and hence the same rule should be applied to the second remedy provided, to wit, an action for damages directly against the carrier. To justify an appeal to the commission, it must appear that the party making the application has a right to invoke the aid of the commission in the line petitioned for. Thus, if the aid of the commission is sought for the purpose of compelling a change of an established tariff of rates, as affecting present or future shipments, it must appear that the party seeking action by the commission is or will be affected by the rate sought to be changed. But, where the aid of the commission is sought solely to remedy a past wrong committed in overcharging a party for freight shipped, I see nothing in the act which limits the right of appeal to the commission solely to the person originally injured.

Since the adoption of the act of March 2, 1889, amendatory of the interstate commerce act, the commission holds that, upon proper application and proof, it is the duty of the commission to pass upon the question of damages for past violations of the law. Macloon v. Railway Co., 5 Interstate Commerce Com. R. 84–95. If, therefore, a property right in the nature of a claim for illegal overcharges is owned by A., he being the original shipper, he has the right, as the party in interest, to seek reparation by invoking the aid of the commission, or he may sue the carrier directly in an action at law. This claim, being in the nature of a property right, A. can lawfully assign to B.; and, upon becoming the beneficial owner thereof, no reason exists why the remedies provided for in the act are not open to B., as the real and beneficial owner of the claim. The assignment of the claim defeats no defense existing thereto, nor does it in any way impose any greater burden upon the carrier in meeting the same; and there appears no good reason why a person who holds the beneficial interest in the claim for damages may not invoke either of the remedies provided for by section 9 of the interstate commerce act.

But it is further urged that the use of the words "in his or their own behalf," in section 9, shows that it was the intent of congress to limit the right to institute suits for damages solely to the persons to whom the damages originally accrued. There is plausibility in the argument, but upon consideration of the provisions of the act, taken as a whole, it would seem more likely that these words were used to mark the distinction between the two remedies provided for by the act, the one being the right to make complaint to the commission, thus calling into action the powers and duties imposed upon the board of commissioners, and the other being the right to bring an action at law, in his or their behalf, for the recovery of the damages. In the one case the party seeking relief must apply to the board of commissioners, and it is the board which calls the carrier to account. In that case the shipper or person injured cannot, in his own name or behalf, call the carrier to account by a direct proceeding, but must invoke the action of the commission. If, however, the shipper prefers to seek damages only, then, in his own behalf, and without the aid of the commission, he can sue the carrier in an action at law. In the

one case the commission takes action on behalf of the party complaining; in the other the party injured can, in his own behalf, bring an action for damages against the carrier. The terms used in the act do not expressly declare that the right of property, forming the basis for the action for damages, is not assignable, and no good reason is shown justifying a forced construction of the words used in order to give support to the contention that congress intended to forbid the assignment of claims of this character.

It is also claimed in argument that the assignability of claims for damages, based upon section 8 of the interstate commerce act, should be denied, upon the ground that the same savors of maintenance. If the assignment carried only a mere right to bring an action, and did not convey a right of property, the argument would have force, because, as is said by the supreme court in Traer v. Clews, supra:

"The rule is that an assignment of a mere right to file a bill in equity for fraud committed upon the assignor will be void, as contrary to public policy, and savoring of maintenance. But, when property is conveyed, the fact that the grantee may be compelled to bring a suit to enforce his right to the property does not render the conveyance void."

The conclusion reached upon this question of the assignability of claims of the character of those declared on is that such claims constitute property rights; that, as such, they can be assigned so as to convey the beneficial interest therein to the assignee; and that the assignment thereof is not prohibited by any of the provisions of the interstate commerce act, nor is it forbidden by any considerations of public policy.

The claims being assignable, and having been duly transferred to the plaintiff, the next point presented by the demurrer is whether suit thereon at law can be maintained in the name of the assignee. If the rule on this question in force in the courts of the state of Iowa is applicable, there can be no doubt as to the right of the assignee to maintain the action at law in his own name. Code Iowa, § 2543, expressly provides that all suits must be brought in the name of the real party in interest, and the uniform construction of the section has been to the effect that the assignee of a chose in action is the proper party plaintiff, even though the assignment is merely verbal. Green v. Marble, 37 Iowa, 95. As already stated, the supreme court, in Pritchard v. Norton, 106 U. S. 124–130, 1 Sup. Ct. 102, 106, holds that "whether an assignee of a chose in action shall sue in his own name or that of his assignor is a technical question of mere process, and determinable by the law of the forum"; and, if the rule thus given is applicable to this case, it settles the point under consideration. On behalf of defendant it is urged that this general rule does not apply to actions based upon the provisions of the interstate commerce act, which creates alike the cause and right of action, and that such actions must be excepted out from the operation of sections 721 and 914 of the Revised Statutes of the United States, which enact that the laws of the several states, except where the constitution, laws, or treaties of the United States otherwise require, shall be regarded as rules of decision, and that in law actions the practice, pleadings, and modes of proceeding in the several states shall be followed as near as may be

in the courts of the United States. The purpose of the latter section is to bring about, as far as possible, uniformity in the mode of pleading and practice in law actions in the same state; and there seems to be no ground for holding that congress intended to secure uniformity only in cases arising at the common law, and to require diversity of practice in cases based solely upon the provisions of the laws of the United States. Whenever the substance of the action is such, as affecting the merits, that the adoption of the state practice would work injuriously, the United States courts may diverge therefrom, under the clause of the statute that required conformity to be "as near as may be"; but, unless good and sufficient reason exists, the statute requires the courts of the United States to conform to the settled practice obtaining in the state wherein the federal court is held. That these sections of the statutes of the United States are applicable to causes of action created by the laws of the United States is settled by the ruling of the supreme court in Campbell v. City of Haverhill, 155 U. S. 610, 15 Sup. Ct. 217; and it must be held, therefore, that, unless substantial grounds exist for excepting this class of actions from the operation of the section requiring conformity in the rule of practice in the federal courts with that provided for by the state law, the state rule of practice must govern.

The sole difference now contended for is that, upon the claims assigned, the action should be in the name of the original owner of the claim, for the benefit of the present plaintiff, instead of being, as it now is, in the name of the assignee, as the real party in interest. The form of the action in this particular does not in the least affect the merits of the controversy, and there is no sufficient reason shown justifying the court in holding that the merits involved in these claims are of such a nature that they form an exception to the general rule that an action at law, under the settled law of Iowa, can be maintained thereon in the name of the assignee, the claims being of the nature of property rights. The demurrer is overruled.