**SCHLESINGER v. MILLER et al.**

**No. 41.**

District Court, S. D. Iowa,
Central Division.

Dec. 30, 1939.

John Connolly, Jr., and C. I. McNutt, both of Des Moines, Iowa, for plaintiff.

C. S. Missildine and Corwin R. Bennett, both of Des Moines, Iowa, for defendants.

DEWEY, District Judge.

Suit was instituted by the trustee of the William F. Miller bankruptcy estate to recover a large amount of bonds in the hands of Ruth E. Miller and Ruth E. Miller, administratrix, and alleged to be the property of the estate. The defendants having answered, trial was had on the merits to the court.

The facts establish that about the year 1929 William F. Miller disposed of his holdings in Des Moines and moved to California. At that time his estate aggregated more than $100,000, and at least half of it was in bonds or securities. These bonds and securities were in the possession of his wife, Ruth E. Miller, and while they were in California, so far as the record discloses, she exercised control over all of them. They were bought with proceeds from his earnings. On their return to Des Moines about 1930 or 1931, a safety deposit box was secured in the Iowa-Des Moines National Bank and Trust Company in the joint name of both of the parties. And on June 6, 1933, this safety deposit box was surrendered and another one taken in the name of Ruth E. Miller but with authority of her husband, William F. Miller, to have access to the box as her agent. This box was surrendered on March 22, 1937, by William F. Miller and Box No. 460 was rented by Mrs. Miller and her husband continued as her agent. The bonds, so far as not expended, were kept in these boxes.

After returning from California the parties bought a home and made extensive repairs and William F. Miller became interested in the operation of slot machines at different places in the State of Iowa. He carried a checking account in the Iowa-Des Moines National Bank and from 1931 to 1934 these deposits aggregated sizeable amounts. There was only a small balance in these accounts at the end of each year.

Prior to 1934, the business of selling the bonds that were sold was practically all done by Mr. Miller.

Sometime in the early part of 1934, William F. Miller while on a hunting trip had the misfortune of causing the loss of an eye to one Gene Merritt of Des Moines, Iowa, and in a suit in the District Court of Polk County, Iowa, Mr. Merritt secured a judgment against him for $16,000.

Thereafter and on Sept. 20, 1934, William F. Miller filed his voluntary bankruptcy petition in this court and was adjudged a bankrupt and secured his discharge on March 28, 1935. The trustee in bankruptcy at that time was Louis J. Garsh. The bankrupt had reported very little property as being his, listing none of the bonds or securities, and the estate was finally closed as though it were a non-asset case. Practically the only creditor was Gene Merritt. His claim on the judgment for $16,000 was filed and allowed as a general claim in the estate.

At the first meeting of the creditors and at a hearing with reference to the setting off of exempt property, and also at a hearing on an application by the trustee to bring suit for the recovery of property due the estate, and at the time of the application for a discharge, the bankrupt, his wife, and officers of the bank, were examined and reexamined, but without the discovery of any property belonging to William F. Miller of any consequence. The position was then taken by William F. Miller and his wife that the bonds above referred to all belonged to and were the property of the wife, Ruth E. Miller. There was so little information secured on these examinations regarding the bonds that the Referee in Bankruptcy refused to permit the trustee in bankruptcy to bring a suit against her.

On the 22nd day of December, 1938, William F. Miller died in Des Moines and on the 28th day of December, 1938, an inventory of safety deposit box No. 352 of the Bankers Trust Company, held in the name of William F. Miller, was made and filed with the State authorities, showing that there was in this safety deposit box at the time of his death United States bonds in the aggregate sum of $16,000. Also, in an inventory of the safety deposit box held in the name of Mrs. Ruth E. Miller, with W. F. Milller, as agent, in the Iowa-Des Moines National Bank and Trust Company of Des Moines, Iowa, there were United States bonds aggregating $20,500.

Gene Merritt, the creditor, on discovery of this situation asked for and the court granted the opening of the bankruptcy estate which had been closed in 1935. The matter was again referred to the Referee in Bankruptcy and at the first meeting of the creditors this trustee was appointed and authority given to bring this suit for the recovery of alleged assets due the estate. The safety deposit box in the name of William F. Miller at the time of his death and in the Bankers Trust Company bank was not only in the name of William F. Miller, but he was the sole person who had right of access thereto.

At the first meeting of the creditors on the reopening of the estate, the defendant Ruth E. Miller, and the officers of the banks were again interrogated regarding these bonds, and Mrs. Miller then testified that they were a part of the original estate which the parties had when they were in California, and that they were her bonds; that none of them were proceeds from earnings of William F. Miller since the return from California, as there had been a depletion in the estate since that time rather than an augmentation. She did not list in the Probate Court any of these bonds as assets of the estate of William F. Miller.

In this suit the trustee claims that all of these bonds were and have been at all times since the petition in bankruptcy was filed the property of this bankrupt estate and that said bonds were knowingly and fraudulently concealed and secreted by the bankrupt from his creditors and trustee, and that such fraudulent concealment was aided and abetted by his wife, Ruth E. Miller, and that such fraudulent concealment was not discovered by this trustee or the creditors, although they used due diligence, until sometime after the death of William F. Miller, and on or about April 15, 1939; that the creditors and the trustee were without means and were unable to obtain any information of such concealed personal property prior to said date.

From these salient facts and the other evidence, one is irresistably brought to the conclusion that William F. Miller at all times either owned or had an undivided interest in all of these bonds; that some time after 1934, a division of these bonds and the estate was had between the parties, or, that there was delivered to William F. Miller to have complete domination and control thereof the $16,000 worth of bonds which were in his own safety deposit box at the time of his death and that the

balance of bonds remaining in the safety deposit box of Ruth E. Miller in the Iowa-Des Moines National Bank were permitted to be and remain in the possession and control of Ruth E. Miller. Also, that such bonds were proceeds of the original estate of the parties and that at all times, at least to the amount of $16,000, they have been the property of this bankrupt estate and while in the custody and control of Ruth E. Miller, she was trustee therefor and not the absolute owner thereof.

The defendant in addition to her claim that these bonds have been at all times the property of Ruth E. Miller, claims and sets up in her answer that the bankruptcy proceedings of William F. Miller were closed on the 30th day of March, 1935, and that this action was commenced on the 21st day of August, 1939, and that the bringing of this action is therefore barred by the statute of limitations contained in Section 11, sub. d, of the Bankruptcy Act of 1898, 11 U.S.C.A. § 29, sub. d. That provision reads as follows: "Suits shall not be brought by or against a trustee of a bankrupt estate subsequent to two years after the estate has been closed." And the defendant relies upon the cases of Kinder v. Scharff, 231 U.S. 517, 34 S.Ct. 164, 58 L. Ed. 343, and Wood v. Carpenter, 101 U.S. 135, 25 L.Ed. 807.

 While probably unknown to the common law in the interpretation of statutes of limitations, courts of equity to prevent the use of the statute to secure advantages by fraud adopted the rule that in suits in equity, where relief is sought on the ground of fraud and where the ignorance of the fraud has been produced by the affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief, provided suit is brought within proper time after the discovery of the fraud. The leading case on this subject is found in Bailey v. Glover, 21 Wall. 342, 88 U.S. 342, 22 L.Ed. 636, and has been consistently followed by the Supreme Court since that time. See Rosenthal v. Walker, 111 U.S. 185, 4 S.Ct. 382, 28 L.Ed. 395; Traer v. Clews, 115 U.S. 528, 6 S.Ct. 155, 29 L.Ed. 467; Pearsall v. Smith, 149 U.S. 231, 13 S.Ct. 833, 37 L.Ed. 713; Kinder v. Scharff, supra. Most of the states, including Iowa, have adopted a similar rule by statute; but as we are here considering an interpretation of a federal statute, its construction by the Supreme Court of the United States must prevail.

The facts in the cases of Wood v. Carpenter, supra, and Kinder v. Scharff, supra, relied upon by the defendant, are distinguishable. The Wood case has to do with the interpretation of the statutes of the State of Indiana and Mr. Justice Holmes in the Kinder case stated the problem there involved, as follows, 231 U.S. at page 521, 34 S.Ct. at page 165, 58 L.Ed. 343: "The question is simply whether, when, after an estate is closed, and more than two years later a trustee comes to the conclusion that he undervalued a claim that he knew of and might have sued upon, or finds that the value has risen since, the bankruptcy court may reopen the estate for the sole purpose of getting rid of the statute, and allowing the trustee to sue."

The situation is obviously different here. In the case at bar the trustee used every reasonable effort to discover concealed assets but was unable to do so, as both the bankrupt and his wife took the position that the bonds were the sole property of Ruth E. Miller, and I am satisfied the evidence substantially supports the above allegations of plaintiff's petition regarding concealment.

The plaintiff also contends that the statute of limitations above referred to was tolled by the reopening of the estate under the authority of Bilafsky v. Abraham, 183 Mass. 401, 67 N.E. 318. While this case has been often referred to by the federal courts, I do not find any case following its reasoning, and it seems to me to follow the reasoning of that court would totally abrogate the above statute of limitations. Also, Judge Holmes in the Kinder case, supra, definitely, I think, denies the doctrine. The dissenting opinion in Heywood-Wakefield v. Small, 1 Cir., 96 F.2d 496, 503, does not support the Bilafsky case as claimed by the plaintiff.

 It might also be stated that while the rule that concealment of assets tolls the statute of limitations until the fraud is discovered was originally a rule in equity, that it has by the decisions above referred to been extended to law actions.

 Also, that if the property here in controversy was owned by the bankrupt prior to the filing of his voluntary petition, the title thereto was in custodia legis in the bankruptcy court at all times until a trustee was appointed and necessarily it was also in custodia legis during the interval between the discharge of the first

trustee and the appointment of his successor. Stanolind Oil & Gas Co. v. Logan, 5 Cir., 92 F.2d 28, 31.

I am abidingly satisfied that William F. Miller prior to the original bankruptcy proceedings, and at all times since, had an interest in the bonds that were held by his wife, in at least the sum of $16,000, and that the bonds in that amount in his safety deposit box at the time of his death are and have at all times since the commencement of said bankruptcy proceedings been the property or the proceeds of property belonging to this estate.

I therefore make the following findings of fact:

1st. I find that the bonds in the aggregate amount of $16,000, more definitely described in the complaint and amendment thereto, were at the time of the death of William F. Miller his absolute property and they were bought with the proceeds of property owned by him prior to the original bankruptcy proceeding.

2nd. That the bonds aggregating $20,500, more particularly described in the complaint and amendment thereto, found in the safety deposit box of Ruth E. Miller at the time of the death of William F. Miller, in the Iowa Des Moines National Bank, were and are the property of Ruth E. Miller.

3d. That the bonds above described as belonging to William F. Miller were the proceeds from property owned by him prior to, and fraudulently concealed by him and his wife during, the time of the bankruptcy proceedings and that there was a fraudulent concealment which was not discovered by his creditors or trustee, until on or about April 15, 1939, although they used due diligence.

And as conclusions of law, I find:

1st. That the $16,000 in bonds above referred to are the property of the bankruptcy estate of William F. Miller and Irvin Schlesinger, as trustee, is entitled to the immediate possession thereof.

2nd. That the statute of limitations, Sec. 11, sub. d, Bankruptcy Act, was tolled by fraud and concealment until April 15, 1939, and is not a bar to this proceeding.

3d. That the plaintiff is entitled to a summary order as against the defendants to forthwith deliver to him as trustee the $16,000 in bonds found in the safety de-

posit box of the bankrupt at the time of his death.

The trustee may prepare a judgment entry in conformity with this opinion, findings of fact and conclusions of law. Defendants except.