MAXWELL et ux. v. STEWART et al.—173 S. W. (2d) 440.

Western Section.   December 30, 1942.

Petition for Certiorari denied by Suureme Court, April 3, 1943.

Paul M. Bryan, R. G. Watkins, Jr., and Paul G. Hyman, all of Memphis, for complainants.

J. G. Farrar, of Memphis, for defendants.

ANDERSON, P. J.  The complainants, Alvin F. Maxwell and wife, Dorothy D. Maxwell, filed the bill in this cause on March 31, 1942, against the defendants, W. N. Stewart and National Bank of Commerce, in Memphis, Trustee, seeking to enjoin the defendants from setting up any claim to a certain tract of land under and by virtue of a second mortgage thereon, and seeking to have them restrained from foreclosing said mortgage and to have delivered up to the complainant, Dorothy Maxwell, a note for $1,650, which was secured by said second mortgage.  The chancellor granted the relief sought by the complainants, dismissing a cross-bill filed by the defendant Stewart.  The latter appealed.

On June 9, 1941, the complainants conveyed to the defendant Bank as Trustee a certain lot in a subdivision to the Town of Rugby to secure a promissory note also executed by them in the sum of $1,650, dated June 6, 1941, and payable to bearer.  The conveyance was expressly made subject to a prior trust deed on the same property, securing a note for $1,000.  The first mentioned second mortgage note was owned by one Harrington, when on July 7, 1941, he was adjudicated a bankrupt upon a voluntary petition.  The Chancellor's decree, which contains the finding of facts, continues in part as follows:

"That the defendant Stewart was at or about that time employed by or with the said Harrington in the construction of the improvements on the above described

Maxwell property and that the defendant Stewart knew of the bankruptcy of said Harrington. That, notwithstanding this knowledge, the defendant Stewart, did, after the date of said adjudication in bankruptcy, enter into a conspiracy with the said Harrington, seeking to retain the benefits of the said second mortgage and note. That pursuant to said fraudulent scheme the said Stewart did take from the said Harrington a note in the face amount of $850.00, dated August 30, 1941, which note purported to be collaterally secured by the said $1,650.00 second mortgage note aforementioned; even though the title to said second mortgage note was not in said Harrington but in his bankruptcy trustee.

"That on December 16th, 1941, the complainant, Dorothy D. Maxwell, purchased the full title to the said second mortgage note from Homer Armstrong, the Trustee in Bankruptcy for the said Harrington, paying the sum of $500.00 therefor, pursuant to appropriate petition and order entered in the Bankruptcy Court abovementioned.

"That, nevertheless, the defendant Stewart demanded that the defendant, The National Bank of Commerce in Memphis, institute, foreclosure proceedings under the second mortgage note and trust deed in which the defendant bank was the named trustee.

"That pursuant to this demand the defendant bank did institute foreclosure proceedings which were restrained by an injunction issued from this Honorable Court."

The chancellor concluded that the alleged pledge of the note by the bankrupt to the defendant Stewart "was just a plain fraud and conspiracy by the defendant Stewart and the bankrupt Harrington to defraud the Harrington creditors;" that Stewart "was not an inno-

cent purchaser for value," but that apart from these facts "when Harrington undertook to transfer this note to him (Stewart) after the bankruptcy, he had no title to transfer and thus he transferred nothing. Conversely, the Trustee in Bankruptcy, who had owned title to it, undertook to sell it to Maxwell and made a good sale." He accordingly ordered that "the bill be sustained and the note cancelled and the mortgage securing the same be cancelled as a cloud on the complainants' property," and that "the injunction heretofore issued and served on the defendants inhibiting and restraining the defendants, their agents and servants, from proceeding with the foreclosure of said second mortgage, be and the same is hereby made perpetual."

On the petition of the Trustee in Bankruptcy, he was directed by the Bankruptcy Court to sell the note in question at a private sale, subject to confirmation or rejection by the court. On December 16, 1941, the Trustee reported that pursuant to the order of the court he had sold the note to Dorothy Maxwell for $500, and prayed that the sale be confirmed. This was done by the court on December 16, 1941, the order reciting in part that "the Trustee herein on receipt of the consideration in cash complete said sale by executing the proper instruments transferring to said purchaser all of his right, title and interest in said property and delivering the same to such purchaser subject to the terms and conditions set forth in the order of private sale, and by placing an endorsement on said note so as to protect all subsequent purchasers or transferees of said note, and said endorsement to show that the Trustee in Bankruptcy in this cause has sold all of his right, title and interest in and to said note to one Dorothy Maxwell for the sum of $500.00."

The note was endorsed by the Trustee in Bankruptcy in the following language:

"For value received, the trustee in bankruptcy for W. N. Harrington, Docket No. 1377, has this day sold, assigned and set over to Mrs. Dorothy Maxwell all of his, and the bankrupt's right, title, interest and remedies in and to this note and trust deed, and W. N. Stewart, the holder, and his assigns agree to notify Dorothy Maxwell in writing prior to the commencement of any foreclosure or proceeding under this note or its trust deed.

"(Signed)   Homer L. Armstrong

"Trustee in Bankruptcy."

There is no explanation as to how the note came to be in the hands of Stewart after the sale.

The latter asserts in his assignments of error and brief that "the only question involved upon this appeal is the right of a Trustee in Bankruptcy to sell and assign his right to set aside a conveyance by the bankrupt made for the purpose of hindering, delaying and defrauding his creditors." We do not think that that is the question presented by the record. Rather the inquiry, as we think, is whether the note and the security were property in the sense that the sale by the Trustee conferred upon the purchaser the exclusive ownership of the same as property with the incidental right to protect her interest therein by this or any other appropriate proceeding.

Generally stated, the position of the defendant is that the Trustee in Bankruptcy alone can maintain an action to set aside a preferential transfer by a bankrupt and this right cannot be sold or assigned even in the case of a fraudulent preference. Nor, he insists, can the right of a Trustee in Bankruptcy to set aside a conveyance by the bankrupt in fraud of his creditors be assigned or

transferred. He argues, moreover, that "a note is simply evidence of a promise to pay or a chose in action against the maker and is not in and of itself a thing of value;" that, therefore, an assignment of a note is no more than the assignment of a bare right of action which is void as contrary to public policy and savoring of maintenance. Numerous authorities are cited to support these several propositions, but we do not think they have any application to the question presented by this case. This is not a bill to set aside a preference or a fraudulent transfer. Nothing passed by the alleged pledge of the note by Harrington to Stewart because Harrington had no interest in it at that time. All of his right, title and interest had been vested in the Trustee in Bankruptcy. The defendant Stewart acquired no more title or interest than if he had stolen the note and mortgage. International Bank v. Sherman, 101 U. S. 403, 404, 25 L. Ed. 866; In re Duncan, D. C., 148 F. 464; 8 C. J. S., Bankruptcy, sec. 168, p. 619, sec. 199, p. 664.

In Adcock v. New Crystal Ice Co. 144 Tenn. 511, 234 S. W. 336, 338, it was held that a conveyance by a Trustee in Bankruptcy of property carries with it all rights of action in connection therewith that the Trustee might have had. The challenged right of action in that case was the right to recover money paid by the bankrupt under a contract which was void as in restraint of trade. The contention was made that the subject of the assignment was nothing more than a bare right of action which was not assignable. To the contrary, the court held that the transfer was one of property and that "a conveyance of property, however, is not void because the grantee may have to bring suit to enforce his right to the property conveyed." In support of this conclusion, the court

quoted at length from the case of Traer v. Clews, 115 U. S. 528, 6 S. Ct. 155, 29 L. Ed. 467, which points out the distinction between the assignment of a mere right to file a bill for fraud committed upon the assignor and the assignment of property carrying with it as an incident thereto the right to sue in protection thereof. See generally: Haymes v. Halliday, 151 Tenn. 115, 268 S. W. 130.

■ There can be no doubt that in the liquidation of the estate of the bankrupt, the Bankruptcy Court had the authority to order, as it did, the sale of the debt evidenced by note and the security involved in this case. We are satisfied that this transaction was a sale of property in contradistinction to the sale of a bare right of action, and that it carried with it the incidental right to maintain this suit in protection of the interest acquired by the purchaser. 8 C. J. S., Bankruptcy, sec. 310, pp. 1038, 1039; Gee v. Parks, Tex. Civ. App., 193 S. W. 767. See, also, Spears v. West Coast, etc., Co., 101 Fla. 980, 133 So. 97; In re Gerstenzang, D. C., 5 F. Supp. 904; Sweet v. Converse, 88 Mich. 1, 49 N. W. 899, 900; Berry v. Chase, 6 Cir., 179 F. 426, 431.

The decree is accordingly affirmed.

Ketchum and Baptist, JJ., concur.