Railroad *v.* Horne.

RAILROAD *v.* HORNE.

(*Knoxville.*    November  17,  1900.)

1. COMMON CARRIER.  *Freight rates for interstate shipment.*

The freight rate stipulated, in a through bill of lading, for inter-state shipment over several lines, controls absolutely until the carrier shows due publication of schedules of rates approved by the Interstate Railway Commission fixing a different rate for such shipment.

2. SAME.  *Same.*

The Court presumes, when the question is involved in a contest between a combination of interstate carriers and a shipper, that the Interstate Commerce Commission did its duty, and directed and required publication of the schedules of rates of such carriers upon approval of same.

3. SAME.  *Same.*

And the burden is upon the carriers in such case to show that the prescribed publication of the schedules of rates was made.

FROM  KNOX.

Appeal  in  error  from  Circuit  Court  of  Knox County.   Jos.  W.  SNEED,  J.

WRIGHT  &  FRANTZ  for  Railroad  Co.

H.  H.  TAYLOR  for  Horne.

CALDWELL, J. This is an action of replevin brought. by John F. Horne against the Atlanta, Knoxville & Northern Railway Company for the possession of "one barrel of alcohol and five barrels of spirits," consigned to him at Knoxville, Tennessee, by Corning & Co., at Peoria, Illinois, over the road of the St. Louis, Peoria & Northern Railway Company and connecting lines of railway, that of the Atlanta, Knoxville & Northern Railway Company being the last of them.

The initial carrier issued a through bill of lading, which recited a freight rate of 51½ cents per 100 lbs. on 2,235 pounds, the actual weight of the entire shipment; and, when the goods reached their destination, the consignee tendered to the terminal carrier the charges due on a computation at that rate, and demanded delivery. This demand was refused, but the company offered to deliver the goods on the payment of charges at the rate either of 99 cents per 100 lbs. actual weight, or of 51½ cents per 100 lbs., estimating each of the six barrels at 420 lbs. and limiting the value of contents to 75 cents per gallon. The alternative rate so offered is the same specified in the southern freight classification and approved by the Interstate Commerce Commission for the territory of this shipment, and the refusal of the company to make delivery on other terms was based upon the idea that the Federal law imperatively required the enforcement of this

rate, notwithstanding the spcification· of a different and lower rate in the bill of lading.

His tender and demand proving ineffectual, Horne resorted to this writ of replevin; and, in regular course of proceeding, he was adjudged entitled to the possession of the goods in question, the trial Judge being of the opinion that the rate named in the bill of lading was controlling, in the absence of evidence that the rate established by the rules of the Interstate Commerce Commission had been brought to the attention of the public "at the initial point of shipment."

The defendant prosecutes an appeal in error.

Ordinarily the rate of affreightment inserted in a bill of lading is binding on the parties and will be effectuated by the Courts as an agreed compensation for the service contemplated. It is the contractual standard for computing the price to be paid for the transportation and delivery of the goods; and the tender of that price by the consignee, as a general rule, entitles him to their immediate possession, and will warrant an action of replevin if they be not promptly surrendered. That rule controls the present case, unless the Federal law invoked by the company creates an exception within which it falls.

Section 6 of the Interstate Commerce Act of 1887 (Ch. 104, 24 Stat., 379), as amended in 1889 (Ch. 382, 25 Stat., 855), requires (1) that every common carrier engaged in interstate transportation

shall furnish the Interstate Commerce Commission a copy of its schedule of rates, and thereafter print and publicly post it at each station upon its line; (2) that all connecting carriers engaged in interstate transportation on joint schedules of rates shall in like manner file a copy thereof with that Commission and thereafter make the same public when, where, and in such manner as the Commission may from time to time require; (3) that the rates, when so established, shall not be changed except upon prescribed notice. The tenth section of the Act imposes a large penalty for a violation of any of these provisions.

This legislation, having been passed by the Federal Congress with a view of regulating interstate commerce, undoubtedly supersedes and abrogates all conflicting State statutes and general laws (*Railway Co.* v. *Hefley,* 158 U. S., 99; *Southern Ry. Co.* v. *Harrison,* — Ala., —); and if applicable in this case, it is obviously controlling in the defendant's favor. Is it applicable under the facts disclosed in this record? Manifestly the Act is not self-executing as to the public. It imposes no obligations or restraints upon the public and in no way affects it, until after certain preliminary steps have been taken by the carrier or carriers. Shippers are not affected by the Act until the required publication of rates has been made, and to bring them within its operation in a given case, the burden is upon the carrier, or carriers,

to show compliance with that condition precedent. If the contest be with respect to a shipment over a single line, the carrier, to have the benefit of the Act against its patron, must show publication at each of its stations; and if it be as to a transportation over connecting lines on joint account, they must show that they have made such publication as the Commission directed, or the Act will not be applied in their favor.

It was the latter burden that rested upon the defendant in this case, the transportation here involved having been made by connecting carriers jointly. The record contains no evidence of any publication, at any time or place, of the alternate rate on which the defendant relied in the Court below; nor, indeed, does it contain any evidence that the Commission ever directed that the same should be published at all. The latter omission might with plausibility be urged as an excuse for the former one—that is, the failure on the part of the plaintiff to prove that the Commission directed a publication of this rate, might with some reason be said to have relieved the defendant of the necessity of proving that publication had been made—if both facts were equally dependent upon affirmative proof for their establishment. Such is not true, however. The publication required by the Act is intended for the inspection, information, and advantage of the public (*Railway Co.* v. *Hefley,* 158 U. S., 101),

Railroad *v.* Horne.

and it is certainly contemplated that some publication shall be made in every instance, though the character and extent of publicity to be given by connecting carriers is left to the discretion and direction of the Commission. The Courts will presume, at least in the absence of proof to the contrary, that the Commission in the discharge of its duty, according to the manifest spirit and clear implication of the Act, directed some kind of publication to be made by these carriers when it set the seal of its approval upon their schedule of rates. This record affords no evidence that such direction was not given, hence the presumption that it was given is conclusive for the purposes of this litigation, and the defense of the company must fail because it did not prove compliance with that direction. This Court cannot say, as did the learned trial Judge, that the alternate rate urged by the company should have been published "at the initial point of shipment," for in the absence of the direction presumed to have been given, it cannot be known that publication at some other point or points in the route was not deemed sufficient and directed by the Commission.

Some publication is presumed to have been directed, but none is shown to have been made. This excludes the case from the operation of the Federal statute, and leaves the plaintiff with his

Railroad *v.* Horne.

rights under the bill of lading unimpaired and enforceable in this suit.

It may be that this company and its associates have subjected themselves to the penalty of that law. Whether they have or not, and it is not the province of this Court to decide, it is certain that they have failed to establish compliance with one of the preliminaries necessary to put it in operation as to the plaintiff. It may well be in force as to them in many of its requirements, and not as to him in any particular.

For the reasons stated, the judgment of the Court below is affirmed.