**PECOS RIVER R. CO. et al. v. REYNOLDS CATTLE CO.**

(Court of Civil Appeals of Texas. Jan. 28, 1911.)

**1. STATUTES (§ 64*)—PARTIAL INVALIDITY—TERMS OF COURT.**

Acts 31st Leg. (Laws 1909, c. 8), reorganizing the Thirty-Second judicial district, though it deprived Borden county of one of the two terms of a year for the year 1909, required by Const. art. 5, § 7, and hence was so far invalid, is not invalid further than the constitutional requirement demands, and after the time for holding the two terms in Borden county under the prior law has passed, terms of court are properly held in accordance with the act of 1909, since the act will no longer deprive any county of its two annual terms.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 64.*]

**2. CARRIERS (§ 30*)—INTERSTATE COMMERCE—RATES—PUBLICATION OF NOTICE.**

Under section 6 of the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 380, as amended by Act March 2, 1889, c. 382, § 1, 25 Stat. 855 [U. S. Comp. St. 1901, p. 3156]), providing that the Interstate Commerce Commission shall from time to time prescribe the measure of publicity which shall be given to the rates, for common carriers to publish, and the places of publication, it is not sufficient that the rates were filed with the Interstate Commerce Commission, but they must be on file at the station or with the agent of the common

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

carrier, in order to justify a rate of such carrier.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 30.*]

3. CARRIERS (§ 230*)—LOSS OR INJURY TO GOODS—DAMAGE TO HORSES—INSTRUCTIONS.

It was not error, in an action against a carrier for damages to horses, to refuse to instruct the jury that if defendants transported such horses on the first through train going in the direction of their destination, that would be in compliance with their obligation under the law, as the carrier's negligence was a conclusion of fact.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 230.*]

4. TRIAL (§ 260*)—INSTRUCTIONS—REQUESTS—INSTRUCTIONS ALREADY GIVEN.

Requested charges covered by the main charge are properly refused.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 651–659; Dec. Dig. § 260.*]

5. TRIAL (§ 253*)—INSTRUCTIONS—IGNORING EVIDENCE.

In an action against a carrier for damages to horses, the refusal of an instruction requested by defendant, that the law presumed that the bad condition of the horses when delivered at the destination was caused by the last carrier handling them, was not erroneous, where there was evidence tending to overcome this presumption.

[Ed. Note.—For other cases, see Trial, Dec. Dig. § 253.*]

6. APPEAL AND ERROR (§ 1050*)—HARMLESS ERROR—ADMISSION OF EVIDENCE.

In an action against a carrier for damages to horses, an answer of a witness as to a question of time to make a shipment of less than a full train load, from Pecos, Tex., to Atchison or Kansas City, Kan., being indefinite, was not prejudicial to defendants.

[Ed. Note.—For other cases, see Appeal and Error, Dec. Dig. § 1050.*]

Appeal from District Court, Reeves County; S. J. Isaacks, Judge.

Action by the Reynolds Cattle Company against the Pecos River Railroad Company and others. From a judgment for plaintiff, defendants appeal. Affirmed.

Ed J. Hamner, J. F. McKenzie, Terry, Cavin & Mills, and A. H. Culwell, for appellant. Stephens & Miller, for appellee.

SPEER, J. This is an action by the Reynolds Cattle Company against the Pecos River Railroad Company, the Pecos Valley & Northeastern Railroad Company, the Pecos & Northern Texas Railroad Company, the Southern Kansas Railroad Company, the Atchison, Topeka & Santa Fé Railroad Company, the Missouri Pacific Company, and the Chicago, Milwaukee & St. Paul Railway Company, to recover damages for injuries to a shipment of horses from Pecos, Tex., to Malta, Mont., and for an overcharge of freights on the same shipment. A jury trial resulted in a verdict and judgment against the Pecos River Railroad Company in the sum of $916.05 on an overcharge of freight; against the Pecos Valley & Northeastern Railroad Company and the Atchison, Topeka &

Santa Fé Railway Company in the sum of $662.80, respectively, on account of negligence in handling the stock, and in favor of all the other defendants. The companies against whom judgment was rendered have appealed.

What is denominated "fundamental" error is first assigned. It is this: The act of the Thirty-First Legislature (Laws 1909, c. 8), providing for the terms of the district court of Reeves county, did not become effective during the year 1909 (this cause having been tried in December of that year), since, under the terms and provisions of that act, Borden county was denied the privilege of two terms of court during that year, in violation of the Constitution. In Bowden v. Crawford, 125 S. W. 5, our Supreme Court did hold "that, in so far as the act in question failed to provide Borden county with two terms of the district court for the year 1909, it is without effect and leaves the act of 1905 in force *for the First circuit of the courts.*" (Italics ours.) It is apparent that after the First circuit is made, then each county affected by the act will be provided with two terms of court each year, and no reason is apparent why the act should not then go into effect.

The trial court instructed on the issue of overcharge in freights that if on the date of shipment certain tariff rates, which were shown to have been filed with the Interstate Commerce Commission, were then on file at the station or with the agent of the Pecos River Railroad Company at Pecos, to find for the defendants. And conversely, to find for the plaintiff, if such rates were not on file with appellant Pecos River Railroad Company. This is complained of, because it is urged that the rates became effective immediately upon the filing of the tariff of rates with the Interstate Commerce Commission. We do not think so. Something more must be shown by a railroad company when it seeks to justify a rate, under a plea that such rate has been duly filed and promulgated under the federal acts. Section 6 of the act regulating interstate commerce (Act Feb. 4, 1887, c. 104, 24 Stat. 380, as amended by Act March 2, 1889, c. 382, § 1, 25 Stat. 855 [U. S. Comp. St. 1901, p. 3156], 3 Fed. St. Ann. 829) provides that the Interstate Commerce Commission "shall from time to time prescribe the measure of publicity which shall be given to such rates, fares and charges, or to such part of them as they may deem it practicable for such common carrier to publish, and the places in which they shall be published." This publication, of course, is intended for the inspection, information, and advantage of the public. Gulf, etc., Ry. Co. v. Hefley, 158 U. S. 101, 15 Sup. Ct. 802, 39 L. Ed. 910. It is certainly contemplated that some publication shall be

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

made in every instance before the rates become effective. Atlanta, etc., Ry. Co. v. Horn, 106 Tenn. 73, 59 S. W. 134. The proof failing to show that any sort of publication had been made, the trial court might have instructed a verdict for the plaintiff as to the overcharge.

We do not think this holding in any manner conflicts with the decision of the United States Supreme Court in Texas & P. Ry. Co. v. Cisco Oil Mill, 204 U. S. 451, 27 Sup. Ct. 358, 51 L. Ed. 562. As stated in the opinion in that case, the requirement that schedules should "be 'posted in two public and conspicuous places in every depot, etc.,' was not made a condition precedent to an establishment and putting in force of the tariff of rates, but was a provision based upon the existence of an established rate and plainly had for its object the affording of special facilities to the public for ascertaining the rates actually in force." Whereas the act (section 6) provides that "when any such common carrier shall have established and published its rates, fares and charges in compliance with the provisions of this section, it shall be unlawful for such common carrier to charge, demand, collect or receive," etc., any other rates than therein specified. The publication prescribed by the Commission, therefore, appears to be a condition precedent to the establishment and putting in force of the tariff of rates.

The special charges informing the jury, in effect, that if the defendants transported said horses on the first through train going in the direction of their destination, that this would be a compliance with their obligation under the law, could not be given, for at last this itself is a question of fact, conceding that appellants were held only to ordinary care in handling the stock. Besides, the matter seems to have been well presented in the court's charge.

The eighth special charge, informing the jury that the law presumed that the bad condition of the horses when delivered at their destination was caused by the last carrier handling them, was on the weight of the evidence and properly refused, since there was evidence tending to overcome this presumption (which is one of fact), and the jury should have been left free, as they were, to place the blame where it belonged.

The answer of the witness Reynolds to the question of time to make a shipment of less than a full train load from Pecos, Tex., to Atchison or Kansas City, Kan., was so indefinite as to be without prejudice to appellants.

The evidence, though not full, is yet sufficient to support the judgment for the full sum returned by the jury. We find no error in the judgment, and it is affirmed.

Affirmed.