## 8117

### HARDAWAY v. SOUTHERN RY. CO.

1. JURISDICTION — CARRIER — INTERSTATE SHIPMENT — FREIGHT. — THE INTERSTATE COMMERCE ACT does not take away the common law right of action for overcharges for freight in all interstate shipments, but the remedy provided by the act is cumulative of the common law remedy.

   Where the timber part of contractor's outfit is shipped under agreement with the initial carrier, who has a contractual right to make a rate binding on the connecting carrier, as lumber at the rate fixed by the commission, and is so billed, but the terminal carrier charges the rate fixed by the commission for a carrier's outfit, the State Court has jurisdiction of an action to recover the difference between the two rates and the case turns on whether the classification as lumber was correct.

   The act (24 Stat. 81) providing a penalty for the failure of a carrier to settle its freight rates according to the bill of lading considered and distinguished from the Texas act.

   Federal and State cases considering the question of State jurisdiction in interstate shipment as to freight charges considered.

2. EVIDENCE.—If admission of letters of the president of the initial carrier as to freight rate were error, it is harmless, as the facts therein referred to were indisputably proved by other competent evidence.

3. IBID.—OPINION—CARRIER—FREIGHT.—Admission of evidence that the carrier had for some years been carrying these or similar timbers

as lumber proper, as whether that was the proper classification, was a matter of opinion and was competent in reply to the evidence of the carrier's expert testimony to the effect that the classification as lumber was wrong. Also, this evidence under the charge as to fixing rates was harmless, if error.

4. CARRIER—FREIGHT.—The materials used in the construction of a machine or house, when resolved into their original elements, may be properly classified as if they were raw material of that kind for shipment as freight.

5. IBID.—IBID.—PAYMENT.—Where a consignee voluntarily pays freight charges with a knowledge of all the facts, without coercion or fraud, after he has received the freight, he cannot recover overcharges of freight.

6. ALLEGATION AND PROOF.—A party cannot recover on inferences sought to be drawn from facts not alleged as grounds of recovery.

Before ALDRICH, J., Cherokee, Fall term, 1910. Reversed.

Action by B. H. Hardaway against Southern Railway Company. Defendant appeals.

*Messrs. Sanders & DePass,* for appellant, cite: *As to jurisdiction:* Drinker on Interstate Commerce Act 456; 68 S. W. 838; 9 So. R. 441; 83 S. W. 362; 74 Fed. 981; 105 Fed. 785; 58 Fed. 858. *After paying freight charges with full knowledge of the facts, consignee cannot recover overcharge:* 79 C. C. A. 489; 15 Rich. 284; 38 S. C. 365. *Letter of initial carrier after delivery of freight cannot bind terminal carrier:* 19 S. C. 353; 27 S. C. 63; 53 S. C. 448; 62 S. C. 127.

*Messrs. Butler & Hall,* contra, cite: *Recovery of voluntary payment:* 30 Cyc. 1325, 1298; 63 S. C. 147; 12 S. C. 572; 13 Rich. 42. *Jurisdiction of State Courts of overcharge of freight:* 51 L. Ed. 561.

March 2, 1912. The opinion of the Court was delivered by

MR. JUSTICE HYDRICK. The facts out of which this action arose, briefly stated, are as follows:

On December 5, 1908, plaintiff delivered to the Chattahoochee Valley Railway Company, at Langdale, Ala., two carloads of extra large and long timbers for transportation to Kings Creek, S. C. . The shipment passed over the line of an intermediate carrier, and was delivered to defendant at Atlanta, Ga., and was carried by defendant to destination. The initial carrier issued a through bill of lading, in which the shipment was classed as lumber, and, according to plaintiff's testimony, the general manager of that road quoted plaintiff the rate on lumber from Langdale to Kings Creek, before the shipment was delivered to it. For the service, defendant demanded at destination and plaintiff paid the rate on a contractor's outfit, which amounted to $143.92 more than the rate on lumber, and this action was brought to recover that amount.

The defendant demurred to the jurisdiction of the Court on the ground that the interstate commerce act vests in the interstate commerce commission and the Federal Court's exclusive jurisdiction of actions to recover overcharges on interstate shipments. The Court overruled the demurrer. The exceptions assigning error in doing so will be disposed of first.

There was no contention as to the reasonableness of the rate either on lumber or on a contractor's outfit. Nor did the plaintiff contend that defendant was bound by the classification of the shipment made in the bill of lading. But his contention was that he was made to pay the rate on a contractor's outfit, when the shipment actually consisted of lumber.

The timbers had been parts of a derrick which plaintiff had used in his business, and holes had been bored in them for the insertion of iron pins and bolts in the construction of the derrick, and the ends of some of them had been rounded and banded with iron. But, according to plaintiff's testimony, he had been shipping such timbers for years as lumber, by agreement with the railroad companies,—the defend-

ant among them,—the only condition being that all irons should be removed from them, which his testimony tended to show had been done in this instance, though it was contradicted by some of defendant's witnesses.     Plaintiff's testimony also tended to show that when the irons were removed from the timbers, they were worth no more than so much new timber or raw material; that whenever they were used again, they were reworked, and the old holes were not utilized; and that he would not have shipped them at the rate on a contractor's outfit, because it would have been cheaper for him to buy new timbers.

There can be no doubt that if the shipment was properly classed as a contractor's outfit, defendant was not only entitled to charge and collect the established rate on that class of freight, if it had proved the filing and publication of the schedule of rates in compliance with the interstate commerce act, but it was bound, under heavy penalty, to do so, and that without regard to any agreement between the shipper and the carrier as to the rate or classification whether stipulated in the bill of lading or not.     *Gulf etc. R. Co.* v. *Hefley,* 158 U. S. 98, 39 L. ed. 910; *Texas etc. R. Co.* v. *Mugg,* 202 U. S. 242, 50 L. ed. 1011.     On the contrary, if it was lumber, the defendant had no right to demand more than the schedule rate on lumber, and anything which plaintiff was required to pay in excess of that rate was an illegal and unwarranted exaction, which plaintiff has the right to recover, because such exaction was not only in violation of the law, but also of the contract alleged to have been made with plaintiff.

There was testimony tending to show that the rate quoted plaintiff on lumber was the rate agreed upon between defendant and its connecting carriers in a joint schedule of rates filed with the interstate commerce commission, and, therefore, that the initial carrier had authority under the common law to bind defendant in quoting the rate.     Without proof of some authority given the initial carrier, the

defendant would not have been bound even under the common law by the rate quoted the plaintiff by the initial carrier. *Smith* v. *Southern Ry. Co.,* 89 S. C. 415. But' there was no contention as to the correctness of the rate quoted on lumber or the rate collected on a contractor's outfit. The issue was: To which class did the shipment belong?

Upon these facts and circumstances alleged in the complaint, and established *prima facie,* at least, by the testimony, it cannot be denied that plaintiff had a cause of action against defendant at common law; and the action is, in fact, brought under the common law, and not under the interstate commerce act either for damages for violation of that act, or upon any right or cause of action created thereby. Therefore, by the express terms of that act, the jurisdiction therein conferred upon the commission and the Federal Courts is cumulative and not exclusive, for in section 22 we read: "Nothing in this act contained shall in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this act are in addition to such remedies." In *M. K. & T. Ry. Co.* v. *New Era Milling Co.,* 100 Pac. 273, the Supreme Court of Kansas held that the State Court had jurisdiction of an action to recover excessive charges on an interstate shipment when the plaintiff did not rely upon the interstate commerce act, but based his claims upon the principles of the common law. The same principle is held in *Gulf etc. R. C.* v. *Moore,* 83 S. W. 362. In Judson on Interstate Commerce, sec. 44, the author says: "In suits brought for the enforcement of rights in interstate commerce, and not for the specific enforcement of the provisions of the interstate commerce act, or the antitrust act, the State Courts have concurrent jurisdiction with the Federal Courts. * * * The fact that interstate commerce is beyond State legislative control does not *ipso facto* prevent the courts of the State from exercising jurisdiction over cases growing out of that commerce." Again, at sec. 248, he says: "The exclusive-

ness of the jurisdiction over suits brought under these remedial sections of the act to enforce its provisions must be distinguished from the concurrent jurisdiction of the State Court over the questions in interstate commerce not arising or based upon the act."

The allegation in the complaint in this action that the classification and rate agreed upon and stipulated in the bill of lading were in conformity with the classification and rate filed with the interstate commerce commission was not made to bring the action under the interstate commerce act, but to lay the foundation to recover the penalty provided by the statute of this State against carriers for failing to settle their freight charges according to the rate stipulated in the bill of lading, *provided* the rate therein stipulated is in conformity with the classification and rate filed with the interstate commerce commission (24 Stat. 81) ; and therein lies the difference between our statute and the Statute of Texas, which was held in the Hefley case, *supra,* to be in conflict with the interstate commerce act, because it undertook to compel the carrier to settle according to the rate stipulated in the bill of lading, regardless of whether it was the rate filed with the commission or not.

In *Texas & Pac. Ry. Co.* v. *Abilene Cotton Oil Co.,* 204 U. S. 426, 51 L. ed. 553, the oil company sued the railroad company in the State Court to recover an amount alleged to have been charged and collected on interstate shipments in excess of a reasonable rate. The rate collected by the carrier was that stated in the schedule of rates filed with the interstate commerce commission and published according to the requirements of the interstate commerce act. The question was whether the State Court had jurisdiction to grant relief upon the finding that the rate charged was unreasonable. The Supreme Court of the United States held that it did not, and rested its conclusion upon the ground that if jurisdiction were conceded to the State Courts in such cases, it might prove destructive of the act, the main object

of which was to establish just and reasonable rates, and to, prevent unjust preferences and discriminations,—because, said the Court, the diversity of decision in the Courts as to what rates are reasonable might result in establishing the very preferences and discriminations which the act was designed to prevent. Therefore, the only reasonable and logical conclusion was, as is clearly and cogently pointed out in the opinion, that the Courts had no jurisdiction to determine the reasonableness of a rate, in anticipation of the action of the commission. We see nothing in the *Abilene case* which is inconsistent with the jurisdiction of the State Court in this case, for clearly there is not in this case any question as to the reasonableness of any rate. On the contrary, we find in that case a clear intimation in support of the jurisdiction of the State Court in a case like this. In discussing the provisions of sec. 22 of the interstate commerce act, hereinbefore quoted, after having pointed out that the concessions of jurisdiction in the Courts, to determine the reasonableness of a rate would be destructive of the act, the Court said: "This clause (i. e. sec. 22), however, cannot in reason be construed as continuing in shippers a common law right, the continued existence of which would be absolutely inconsistent with the provisions of the act. In other words, the act cannot be held to destroy itself. The clause is concerned alone with rights recognized in or duties imposed by the act, and the manifest purpose of the provision in question was to make plain the intention that any specific remedy given by the act should be regarded as cumulative, when other appropriate common law or statutory remedies existed for the redress of the particular grievance or wrong dealt with in the act. Having concluded that the commission alone had power originally to entertain proceedings to alter an established rate, the Court said: "It is unnecessary for us to consider whether the Court below would have had jurisdiction to afford relief, if the right asserted had not been repugnant.

31—90

to the provisions of the act to regulate commerce." So the question involved in this case was neither involved nor decided in that case. In the *Hefley case,* the facts were these: The rate fixed by the carrier in the bill of lading for an interstate shipment was less than the rate established, filed with the interstate commission, and published, as required by the act of Congress. The carrier demanded and collected the established rate. The shipper sued in the State Court and recovered judgment against the carrier for a penalty provided by the statute of the State of Texas against the carrier for charging more than the rate fixed in the bill of lading. The Supreme Court of the United States reversed the judgment of the State Court, holding that the State statute was in conflict with the interstate commerce law, which penalized the carrier, if it failed to collect the schedule rate, and, as the two statutes were in conflict, the State law must yield. In the *Mugg case,* the carrier quoted the shipper, at the point of shipment, a rate on an interstate shipment, which was less than the schedule rate. At destination, the carrier exacted the schedule rate. The shipper sued in the State Court and recovered judgment against the carrier for the excess of the schedule rate over the rate quoted. Following the *Hefley case,* the Supreme Court of the United States reversed the judgment of the State Court, holding that the carrier was bound, under the interstate law, to collect the schedule rate, which was binding on both carrier and shipper. We fail to see wherein the principle decided in either of these cases militates against our position, because the rate alleged to have been agreed upon in this case was the schedule rate for lumber, and the rate collected was the schedule rate for a contractor's outfit. There was, therefore, no issue about the rate, but only as to the classification. In neither the *Hefley case* nor the *Mugg case* was there any intimation that the State Court had no jurisdiction of an action to recover a charge in excess of the schedule rate; but in each it was held that

the State Court erred in its decision of the question involved on the merits. While it does not appear that the question of jurisdiction was raised in either of those cases, yet it can hardly be supposed that both the State Court and the Supreme Court of the United States would have overlooked so important a question and have decided the cases on the merits, unless it had been supposed that the State Courts had jurisdiction. A case involving a right similar to the one involved in this case was decided on the merits by the Supreme Court of Alabama (*Sou. Ry. Co.* v. *Harrison*, 119 Ala. 539, 43 L. R. A. 385), and the opinion of the Alabama Court was adopted by the Supreme Court of the United States in the Mugg case. Jurisdiction of similar cases has been assumed by the Courts of Texas. *Ry. Co.* v. *Lumber Co.*, 1 Tex. Civ. App. 553; *Ry. Co.* v. *Stoner*, 5 Tex. Civ. App. 50. These cases afford an argument by implication at least in favor of our conclusion.

Numerous cases hold, we think correctly, that the Federal Courts and the interstate commerce commission have exclusive jurisdiction of actions based upon the interstate commerce act, or brought to enforce a right created by that act. *Van. Patton* v. *Chicago etc. R. Co.*, 74 Fed. 981; *Edmunds* v. *Illinois Central R. Co.*, 80 Fed. 78; *Carlisle* v. *Missouri etc. R. Co.*, 168 Mo. 652, 68 S. W. 898; *Copp* v. *L. & N. R. Co.*, 43 La. Ann. 511, 9 So. 441, 12 L. R. A. 725. In some if the cases, the broad statement is made that the State Courts have no jurisdiction of actions to recover overcharges in the rates on interstate shipments, but an examination of these cases discloses the fact that the cause of action was created by or the action was based upon the interstate commerce act, or the word "overcharge" was used in the sense of an unreasonable charge. And whatever doubts may have existed as to the lack of jurisdiction in the State Courts to determine whether an interstate rate is unreasonable, they were dispelled by the decision in the *Abilene Cotton Oil Company's* case. But the word "over-

charge" is also used in some of the cases to mean a charge in excess of "that which is established in the schedule rates filed with the interstate commerce commission, and published as required by the interstate commerce act." We see no reason why the State Court should not have jurisdiction of an action to recover such an overcharge, because the exaction of it is a violation not only of the interstate law, but of the contract of the carrier with the shipper, and it is a wrong for which the common law affords a remedy, and such remedy is, as we have seen, expressly preserved by the terms of the interstate commerce act. Moreover, the enforcement of the rights of the shipper and of the carrier in regard to such an overcharge does not in any manner conflict with the interstate law.

In *Banner* v. *Wabash R. Co.,* 108 N. W. 759, the plaintiff was required to pay an arbitrary charge made by the carrier, because he shipped sixteen head of cattle in an emigrant car, when the rules of the carrier fixing the rate limited the number to be shipped in such car to ten, and provided that the freight on animals in excess of that number should be at a certain rate, and established an arbitrary weight on which the computation should be made. There was nothing in the schedule of rates or classification filed with the interstate commission authorizing a charge for such arbitrary weight. The Supreme Court of Iowa held that the State Court had jurisdiction of an action to recover the amount so paid by plaintiff, the suit not being one to recover an overcharge under the interstate commerce act, but to recover a wholly unjust and unauthorized exaction demanded and collected not only in violation of the act itself, but in violation of the contract made with plaintiff, and, therefore, in violation of the common law.

In *Wabash R. Co.* v. *Sloop,* 98 S. W. 607, the Supreme Court of Missouri held that the State Court had jurisdiction of an action by a shipper to recover an amount collected by a carrier on an interstate shipment in excess of

the rate agreed upon between the carrier and the shipper, notwithstanding the carrier had filed its schedule of rates with the interstate commerce commission, and notwithstanding the rate collected was the schedule rate. The ground upon which the Court based its decision was that the carrier did not prove that it had published the schedule of rates as required by the interstate law. The Court held that the carrier was bound to show that it had brought itself within the purview of the act by compliance therewith before it would be allowed to base any defense upon its provisions. The same ruling was made in *Railroad* v. *Leatherwood* (Tex. Civ. App.), 69 S. W. 121, and in *Railroad* v. *Horne,* 106 Tenn. 73, 59 S. W. 134. The principle upon which these cases were decided, if applied in this case, would be decisive in favor of the jurisdiction of the State Court, because the defendant failed to prove that its schedule of rates was published in accordance with the requirements of the interstate commerce act. This being a case of a joint schedule of rates between connecting carriers engaged in interstate transportation, the act required its publication at such time and place and in such manner as the commission might require. There was no evidence of any direction as to its publication by the commission, and of compliance therewith by the defendant. The commission will be presumed to have done its duty and directed the time and place and manner of publication, and the burden was on defendant to show compliance therewith. *Wabash R. Co.* v. *Sloop, supra; Railway* v. *Horne, supra.* While the reasoning in favor of the conclusion reached in those cases is not without force, we prefer to rest our conclusion that the Circuit Court had jurisdiction upon the ground that this action is not brought under or based upon the interstate commerce act, but upon the principles of the common law, and the remedies afforded thereby have been expressly preserved by the interstate commerce law; and because the enforcement of the rights of the parties in such cases by the State Courts

will in no way conflict with the interstate law, or tend to destroy the uniformity which was designed to establish, any more than the decision of the same questions by the Federal Courts.

To hold that the State Courts have no jurisdiction of actions like this will result in so much inconvenience and be so injurious in its consequences to the citizens of the States, and will place them so completely at the mercy of interstate carriers with regard to the settlement of such claims, that the argument in favor of that conclusion should be more cogent and convincing than it is to induce its adoption. The practical result of requiring shippers to go before the interstate commerce commission or in the Federal Courts to collect these small claims will be to compel the abandonment of them altogether. We feel sure that Congress did not contemplate or intend any such result, and in the absence of such intent, plainly expressed in or necessarily to be inferred from the provisions of the act, we are not inclined to adopt a construction which will lead to that result.

The next assignment of error is in admitting in evidence two letters written to plaintiff by J. A. Avery, the general manager of the Chattahoochee Valley Railway Company, the initial carrier, and in allowing plaintiff's agent, Jamison, to testify as to the rates quoted him by Mr. Avery. The first letter is dated November 26, 1908, and was written before the shipment was delivered to the initial carrier. It quoted rates on lumber and a contractor's outfit from Langdale to Kings Creek. The other is dated September 2, 1909, and was written after the controversy had arisen between plaintiff and defendant about the alleged overcharge. In this letter, Mr. Avery states that on November 26, 1908, he quoted plaintiff rates and gives the rates quoted. He also states that the shipment was billed out by his road as lumber, and at the rate on lumber, and that the rate was raised beyond his line, and

the rate on a contractor's outfit used. We deem it unnecessary to consider in detail the numerous grounds upon which the objection to this testimony was made, because it is apparent that there was no dispute about the facts which it tended to prove, and that they were conclusively proved by indisputably competent evidence,—the rates by the schedule of rates, filed with the interstate commerce commission, and the building of the initial carrier, by its bill of lading and the way bill, all of which were in evidence. Moreover, the Court clearly and correctly charged the jury that the parties could not, by any agreement or device, vary or depart from the schedule of rates filed with the interstate commerce commission; and that, if plaintiff, by fraud or mistake, shipped a contractor's outfit as lumber, it was the right and duty of defendant to make the proper correction and collect the rate on a contractor's outfit; but, if the shipment was, in fact, lumber, defendant had no right to collect the higher rate; and, hence, an important inquiry for them was, whether the shipment was lumber or a contractor's outfit. So that, even if we were to concede, which we do not, that the testimony was erroneously admitted, it is clear that the error was harmless.

There was no error in admitting evidence that for some years defendant had been carrying the same and similar timbers as lumber. There was nothing in such testimony which tended to vary the schedule rate, but it merely tended to prove the opinion previously held by defendant's agents and experts as to the real nature of the shipment which was necessarily a subject for opinion; and, therefore, defendant's experts were allowed to testify that, in their opinion, the shipment should have been classed as a contractor's outfit. Therefore, it was clearly competent to prove that for some years past defendant's agents. and experts had entertained a different opinion, which was evidenced by the fact that the same and similar timbers had been carried by defendant as lumber; and, hence, that

defendant's present contention was not well founded. There was, therefore, no error in the instruction that the jury might, in determining the real nature of the shipment, consider how similar shipments had been regarded and dealt with by the parties themselves,—especially as the jury were cautioned that no device or agreement or custom of dealing between the parties could avail to make the shipment other than what it really was, and that they must determine its real character.

The Court charged, in substance, that if raw materials were used to construct a machine, or other structure, and if such machine or structure were shipped, it would be subject to its proper classification and rate, but, if it were resolved into its original elements, these might be shipped as such, each being subject to its original classification, notwithstanding it had once been a part of a machine or other structure. The idea was illustrated by telling the jury that if raw materials, lumber, etc., were used to construct a house, and if the house were afterwards torn down and resolved into its original elements, that which was lumber might be shipped as lumber. We see no error in this instruction. Certainly, the fact that materials have at one time been used for a certain purpose or in a particular way does not irrevocably devote them to that purpose or to be used in that way and no other. We see no reason why a cable which has been used in connection with and as part of a derrick, or other machine, should not be classed as a cable for transportation, when it has been disconnected from the derrick or machine.

The defendant asked the Court to direct the verdict in its favor on the ground, among others, that the money paid on account of the alleged overcharge could not be recovered, because the payment was voluntary. This request was refused. It is an elementary principle that no action will lie to recover money voluntarily paid with full knowledge of all the facts. *Robinson v. City Council,*

2 Rich. 317; *Kenneth and Gibson* v. *S. C. R. Co.,* 15 Rich. 284. The grounds upon which this principle of law is based are so fully stated and clearly reasoned in the cases cited that we deem it unnecessary to prolong this opinion by any further discussion of them. The general rule is thus succinctly stated in 30 Cyc., 1298: "Except where otherwise provided by statute, a party cannot, by direction or by way of set-off or counterclaim, recover money voluntarily paid with a full knowledge of all the facts, and without any fraud, duress, or extortion, although no obligation to make such payment existed."

It follows that when one undertakes to recover money which he has paid to another, he must allege and prove some fact or facts which will take his case out of the general rule above stated. Otherwise, his complaint would be subject to demurrer for insufficiency. Plaintiff recognized this, because he alleges in his complaint that defendant coerced the payment of the alleged overcharge by refusing to deliver his goods until it was paid. We have searched the record diligently without being able to find any evidence tending to prove this allegation. On the contrary, it appears that the money was paid after the shipment was delivered to plaintiff. In their argument upon this point, respondent's attorneys make no attempt to point out any evidence tending to support the allegation of the complaint, that the payment was made under compulsion. They do attempt to show some testimony from which it might be inferred that the money was paid under the mistaken assumption or belief that the amount charged by defendant was the rate on lumber; or, because it was difficult to figure the correct amount from the data at hand, that the payment was made under mistake or in ignorance of all the facts. They also argue that it is inferable from the testimony that the change of the rate was concealed from plaintiff, and, hence, that there was a fraudulent concealment of facts.

If we concede that such inferences might be drawn, we do not see how this can help the plaintiff, for unfortunately there is no allegation of any such facts or grounds of recovery in the complaint. The purpose of pleading is to advise the parties of the issues which they will be called upon to meet at the trial. It would violate one of the fundamental rules of law and pleading to allow the plaintiff to recover upon a different ground from that alleged. It is elementary that the *allegata* and *probata* must correspond. We are constrained to hold that on this ground the verdict should have been directed for defendant; and, therefore, the judgment below must be reversed.

Judgment reversed.

MESSRS. CHIEF JUSTICE GARY *and.* JUSTICE WOODS *only participate in this opinion and concur.*