THE NEW YORK, NEW HAVEN AND HARTFORD RAILROAD
COMPANY *vs.* J. FRANK SALTER.

Third Judicial District, New Haven, June Term, 1926.

WHEELER, C. J., CURTIS, MALTBIE, HAINES and HINMAN, Js.

Where the amount alleged to be due from the defendant in an
action brought to the Court of Common Pleas, is stated as a
single debt, though consisting of freight charges on various
shipments, no one of which, if separately sued upon, would be
within the jurisdiction of that court, it must be assumed that,
by agreement or custom, the parties treated the account as a
continuing one and the debt due at any one time as the total
of the several items.

Congress has provided (8 U. S. Comp. Stat. [1916] § 8569) that no
change shall be made in the rates, fares and charges which
have been filed by a common carrier with the Interstate Com-
merce Commission, "except after thirty days' notice to the
commission and to the public published as aforesaid." *It
would seem* that, in order to give appropriate effect to the
word "published" and to afford to shippers some practical
means of acquiring information concerning changes of rates,
this statute should be construed to require the carrier, as a
prerequisite to the validity of a change, to post notices thereof
in its stations and offices open to public inspection for the
period stated.

There is a rebuttable presumption applied by the Federal courts—
and since it relates to interstate commerce, it is binding upon
our courts—that a carrier has complied with all the require-
ments of the law concerning a change of rates; and, therefore,
in the present case, where the plaintiff offered evidence that,
more than thirty days before the shipments by the defendant,
it had filed with the Interstate Commerce Commission, a tariff
of new rates, the trial court properly ruled that, in the absence
of proof by the defendant to the contrary, it must be assumed
that, if any further action were necessary to effectuate the new
schedule, it had been taken by the plaintiff.

This common-law presumption is re-enforced by an Act of Con-
gress (8 U. S. Comp. Stat. [1916] § 8584, subsection 12) which
provides that "copies of schedules, and classifications and tariffs
of rates, fares, and charges . . . shall be received as prima
facie evidence of what they purport to be for the purpose of

investigations by the commission and in all judicial proceedings," and which must be construed to mean that a copy of a schedule such as that offered in evidence by the plaintiff in the present case, is prima facie proof that the rates therein stated are validly and effectively established.

The plaintiff's schedule of new rates was entitled "Joint Coal Tariff, applying on Anthracite Coal and Anthracite Briquettes and Boulets in Carloads," and contained four columns headed, respectively, "Prepared and Anthracite Briquettes and Boulets," "Pea," "Buckwheat," "Rice and smaller sizes." *Held* that, in view of the established use in the coal trade of the term "prepared coal," to describe the sizes of coal above pea, this schedule embraced the defendant's shipments of natural anthracite coal of egg, stove and chestnut sizes, and was not restricted, as claimed by him, to artificial coal products.

Argued June 8th—decided July 30th, 1926.

ACTION to recover certain freight charges and the Federal war tax thereon, alleged to be due upon shipments of coal delivered by the plaintiff to the defendant, brought to the Court of Common Pleas for New Haven County and tried to the jury before *Pickett, J.;* verdict and judgment for the plaintiff for $909, and appeal by the defendant. *No error.*

*George E. Beers* and *Albert M. Herrmann,* with whom, on the brief, was *Alfred Coit,* for the appellant (defendant).

*Norman S. Buckingham,* for the appellee (plaintiff).

MALTBIE, J.  The plaintiff is suing to recover a balance of freight charges it claims to be due upon certain shipments of coal from Pennsylvania to the defendant at Groton, Connecticut.  While the amount claimed is made up by adding together the balances due on various shipments, no one of which, if separately made the subject-matter of an action, would be within the jurisdiction of the Court of Common Pleas, the complaint states that amount as constituting one debt, and

we must assume that, by agreement or custom, the parties treated the account as a continuing one, and the debt due at any one time as the total of the various charges that had been incurred. So regarded, the action was within the jurisdiction of the court. *Main* v. *First School District,* 18 Conn. 214; *Nichols* v. *Hastings,* 35 Conn. 546; *Morse* v. *Frost,* 54 Conn. 84, 6 Atl. 182.

It was agreed that the shipments were all made and delivered to the defendant between November 29th, 1920, and March 28th, 1921; and that the defendant had paid the plaintiff such sums as would be due in accordance with the tariff of freight charges for this route in effect previous to November 18th, 1920, but refused to pay additional amounts required to make the charges comply with a tariff schedule for the route, filed with the Interstate Commerce Commission, to be effective on that day. When the case came on for trial, the plaintiff produced in evidence certified copies of the schedule of rates on file with the commission and in effect before November 18th, 1920, and of a supplemental schedule on file with the commission, to be effective on that day, and thereupon rested its case. The defendant offered no testimony. The principal question of law in the case is, was the plaintiff entitled to recover the charges stated in the supplemental schedule without offering proof that that schedule was effective against the shippers other than the production of a copy certified by the secretary of the Interstate Commerce Commission as on file with it?

The statutes of the United States provide that no change shall be made in the rates, fares and charges which have been filed by a common carrier with the commission, "except after thirty days' notice to the commission and to the public published as aforesaid." 8 United States Comp. Stat. (1916) § 8569. The de-

fendant claims that under this provision no changes in rates are valid unless they have been published by the carrier by placing them in its stations and offices open to public inspection for the period stated, while the plaintiff claims that the statute only requires that they be filed with the commission. We incline to the position taken by the defendant. The statute begins with a provision for the filing of the schedules, but it then continues with a requirement that they be printed and kept open to public inspection, and thereafter in two instances, it speaks of the schedules as those "filed and published"; and we may not assume that Congress used the word "published" without meaning thereby to convey some intent. *Louisville & N. R. Co.* v. *Mottley,* 219 U. S. 467, 475, 31 Sup. Ct. 265. So to hold that only filing with the commission was requisite would be practically to disregard one of the main purposes of this legislation, information to those who contemplate transportation of freight or passengers as to the charges to be incurred; *Louisville & N. R. Co.* v. *Mottley, supra,* page 476; for shippers ordinarily rely for such information upon the facilities at hand in the local offices of the carrier, and few are in a position readily to learn of the contents of the records at the office of the Interstate Commerce Commission. If we have recourse to the statute as originally enacted, the conclusion seems inevitable that by publication was meant the giving of notice to the public of changes in rates by schedules in the stations and offices of the carrier, and there is nothing in the changed language of the statute in its present form to indicate an intent to alter the meaning of the law in this regard. 24 U. S. Stat. at Large, 380. While we are aware of no decision of the Supreme Court of the United States upon the precise issue, the language of its opinions strongly suggests such a construction of the Act; *United States* v. *Miller,*

223 U. S. 599, 604, 32 Sup. Ct. 323; *Texas & Pacific Ry. Co.* v. *Cisco Oil Mill,* 204 U. S. 449, 452, 27 Sup. Ct. 358; *Louisville & N. R. Co.* v. *Mottley,* 219 U. S. 467, 476, 31 Sup. Ct. 265; *Armour Packing Co.* v. *United States,* 209 U. S. 56, 80, 28 Sup. Ct. 428; *New York Central & H. R. R. Co.* v. *United States,* 212 U. S. 500, 504, 29 Sup. Ct. 309; while the reason given by that court for holding that the keeping of two copies of the schedules posted in every railroad station was not a prerequisite to the validity of rates, readily distinguishes the provision in the law requiring that to be done from the one we are considering; *Texas & Pacific Ry. Co.* y. *Cisco Oil Mill, supra;* and the cases which hold that shippers are bound with notice of the rates on file with the commission patently have reference to rates which have been duly established. *Boston & Maine Railroad* v. *Hooker,* 233 U. S. 97, 111, 34 Sup. Ct. 526; *Louisville & N. R. Co.* v. *Maxwell,* 237 U. S. 94, 97, 35 Sup. Ct. 494; *Chicago & Alton R. Co.* v. *Kirby,* 225 U. S. 155, 166, 32 Sup. Ct. 648. If we turn to the decisions of State courts, we find that the preponderance of authority clearly supports the defendant's contention. *Oregon Railroad & Nav. Co.* v. *Thisler,* 90 Kan. 5, 133 Pac. 539; *Schaff* v. *J. C. Famechon Co.,* 145 Minn. 108, 176 N. W. 197; *Atlantic K. & N. R. Co.* v. *Horne,* 106 Tenn. 73, 59 S. W. 134; *Virginia-Carolina Peanut Co.* v. *Atlantic Coast Line R. Co.,* 166 N. C. 62, 69, 82 S. E. 1; *Pecos River R. Co.* v. *Reynolds Cattle Co.* (Tex. Civ. App.) 135 S. W. 162; *International & G. N. Ry. Co.* v. *Carter* (Tex. Civ. App.) 180 S. W. 663. We are not required, however, to reach a final conclusion upon this issue, for there are other considerations determinative of the case.

The plaintiff contends that, even if a change in rates could only be effectively established after such a pub-

lication of them, it was entitled to rely upon a presumption that it had complied with these requirements of the law. The Federal courts recognize such a presumption. *Cincinnati, N. O. & T. P. Ry. Co.* v. *Rankin,* 241 U. S. 319, 327, 36 Sup. Ct. 555. We may not approach the question of our duty to apply that presumption as we would if we were dealing with the general rule applicable where a presumption in effect in another jurisdiction is invoked in an action in our courts. The need of uniformity in the determination of rights growing out of interstate commerce is so great, and the scope of the legislation of Congress in the exercise of its constitutional power to regulate that commerce is so all-embracing, that the Federal government has preëmpted the whole field. "The transactions in question related to interstate commerce; consequent rights and liabilities depend upon Acts of Congress, agreement between the parties, and common law principles accepted and enforced in Federal courts. And the carrier is entitled to the presumption that its business is being conducted lawfully." *New York Central & H. R. R. Co.* v. *Beaham,* 242 U. S. 148, 151, 37 Sup. Ct. 43; and see *Adams Express Co.* v. *Croninger,* 226 U. S. 491, 505, 33 Sup. Ct. 148; *Phillips Co.* v. *Grand Trunk Western Ry. Co.,* 236 U. S. 662, 35 Sup. Ct. 444; *Southern Express Co.* v. *Byers,* 240 U. S. 612, 614, 36 Sup. Ct. 410; *Southern Ry. Co.* v. *Prescott,* 240 U. S. 632, 639, 36 Sup. Ct. 469. In the *Beaham* case, the Kansas City Court of Appeals in Missouri had held that a passenger who had purchased a railroad ticket and checked her baggage, was not bound by certain limitations of liability for loss of baggage printed upon both the ticket and the baggage check, and refused to regard copies of certain tariffs of excess baggage rates on file with the Interstate Commerce Commission, which had been admitted in evidence, because they

were certified by the chairman and not the secretary; but, on a writ of error, the Supreme Court, reversing the judgment, held that, despite the fact that the State court had arrived at its decision by applying the law of its own jurisdiction, the acceptance of the ticket established an agreement prima facie valid which limited the carrier's liability, and it also denied the right of the State court to disregard the copies of the schedules. In the *Prescott* case, the action was brought to recover damages for the loss by fire of freight which the railroad was holding as a warehouseman; the Supreme Court of South Carolina, applying the law of the State, held that the burden of proving that there was no negligence on the part of the railroad rested upon it; but the Supreme Court, reversing the judgment, held that, as the goods were destroyed by fire, by the principles of the common law, the burden was upon the owner of the freight to show negligence on the part of the railroad. These decisions make it clear that State courts are constrained to apply the presumption established in the Federal courts and to hold that proof of the filing by a carrier with the Interstate Commerce Commission of a supplemental tariff changing rates previously in force, prima facie establishes that the carrier had taken all the steps required by the statute to make the new rates valid.

Moreover, the statutes of the United States provide that "copies of schedules, and classifications and tariffs of rates, fares, and charges," as well as other documents on file with the commission, "shall be preserved as public records in the custody of the secretary of the commission, and shall be received as prima facie evidence of what they purport to be for the purpose of investigations by the commission and in all judicial proceedings." 8 United States Comp. Stat. (1916) § 8584, subsection (12). It is too narrow a construction

of this provision to say that copies of schedules are admissible in evidence merely to show the tariffs on file with the commission. Had that been intended, it would have been sufficient simply to provide that they should be admissible in evidence, and to say no more. Tariffs such as those here in question "purport to be" schedules of effective rates and charges, and the copies here in question were prima facie evidence that the rates therein stated were valid and effective as against the defendant. *Hanish* v. *United States,* 227 Fed. 584, 588.

One other claim of error requires discussion. It was argued that the shipments in question consisted of ordinary anthracite, of egg, stove or chestnut size, and the defendant claims that they were not embraced within the terms of the supplemental schedule. Both the schedule in effect before the supplemental schedule was filed and that schedule are entitled "Joint Coal Tariff, applying on Anthracite Coal and Anthracite Briquettes and Boulets, in Carloads," and they state four rates in as many columns, headed, respectively, "Prepared and Anthracite Briquettes and Boulets," "Pea," "Buckwheat," "Rice and smaller sizes." Defendant's counsel contend that the phrase "Prepared and Anthracite Briquettes and Boulets" purports to cover only artificial coal products, and not coal in its native form, or at least that the trial court could not apply it to the latter in the absence of information from those versed in such matters, that it properly included such coal. "Prepared Coal," in the anthracite coal trade, has, however, an established meaning; it is used to describe the sizes of coal above pea. *Rates for Transportation of Anthracite Coal,* 35 I. C. C. Rep. 220, 223; *Meeker & Co.* v. *Lehigh Valley R. Co.,* 21 I. C. C. Rep. 129, 131. Read in connection with the title of these schedules, the heading of the first column

can only be interpreted to include anthracite coal in its native form in sizes above pea and briquettes and boulets made from anthracite coal. It therefore includes the coal in question.

The situation before the court was, then, this: The schedules of rates offered in evidence applied to the shipments in question, if they had been validly established; both by reason of the presumption. that the plaintiff had taken all steps necessary validly to establish the rates contained in them, and by reason of the provisions of the statute making the copies prima facie evidence of their contents, the plaintiff was entitled, upon putting them in evidence, to rest its case, and, in the absence of other evidence, the verdict in its favor was well found. The trial court improperly treated as evidence certain statements of counsel, to the effect that there were no tariffs in existence covering shipments of anthracite coal over this route other than those in evidence, but, in view of the 'situation presented, no harm could have been done thereby. The charge was in other respects somewhat informal, but it was rather favorable to the defendant than otherwise and contains nothing which could have misled the jury. In the light of our conclusions upon the main issues of the case, the other claims of error do not require discussion.

There is no error.

In this opinion the other judges concurred.